Mr. Chief Justice TANEY
 

 delivered the opinion of the court.
 

 This is a proceeding in admiralty, and the point first to be considered is the question of jurisdiction.
 

 The appellee filed a libel
 
 in personam
 
 against the appellant, in the District Court of the United States for the District of Massachusetts, setting forth that he was the owner of the bark Zamora, which sailed, from New Orleans for Boston, on the 6th of November, 1845, with an assorted' cargo, a- part of which consisted of 154 bales of cotton, consigned to the appellant.; that she was overtaken by "a storm in Massachusetts Bay, and was run on shore by the captain, in order to save the lives of those on board, and for the preservation of the cargo, which, together with the vessel, were in imminent danger of being totally lost; that by this voluntary stranding, the vessel was totally lost, but the cotton was saved; and that the appellant had- saved the' value of it, to wit, § 5,400; and that the appellee .is entitled to contribution from the owners of the .-cargo and the appellant, to indemnify him for the loss of his vessel.
 

 The appellant answered, admitting the ownership of the vessel as alleged in the libel; that she was wrecked in-Massa,chusetts Bay, and that the cotton had come to his hands in a damaged state ; but denies that the appellee is entitled to the general average he claims, and insists that he is Rot liable to contribute on account of the- cotton, to indemnify the owner for the ioss of his bark.
 

 . Upon this libel and answer-, the parties proceeded -to take testimony to show the circumstances under which the vessel had been stranded; and upon the hearing, a decree was passed in the District Court in favor of the appellee for $ 2,500, which was affirmed in the Circuit Court, and from which last-mentioned decree, the present appeal to this court was taken. .
 

 
 *731
 
 Upon the face of the proceedings, therefore, the question arises whether the District Court had jurisdiction, as a court of admiralty, to try the matter in dispute. And it is unnecessary to state more fully the pleadings.and testimony until this question is disposed of.
 

 It is true, the counsel for the appellant has waived all objections on that score. But the consent of parties cannot give jurisdiction to the courts of the United States, in cases where it has not been conferred by the Constitution and laws.' And if the proceedings show a case which the District Court was not authorized to try, it is the duty of this court to take notice of the want, of jurisdiction, without waiting, foran objection .from either party.
 

 The court of admiralty undoubtedly.has jurisdiction in cases where the vessel or cargo is subject to a lien created by. the maritime; law. And where the lien is attached to the vessel or cargo, it will, until it is discharged, adhere to the property in the hands of third-persons, and will follow the proceeds, in certain cases, in the hands of assignees. • And in such cases, the lien may be enforced in'a court of admiralty, by a . proceeding inpersonam, against the party who holds the property or proceeds. This doctrine was recognized in this court in the case of Sheppard
 
 v.
 
 Taylor, 5 Pet. 675. In that case, the holders of the proceeds of. a ship which had been condemned in a Spanish .tribunal, and the value of the vessel afterwards paid to the owners by the Spanish government/were held liable for seaman’s wagés, in a proceeding.
 
 in personam,
 
 although they held them as assignees of the: owners jn payment of a
 
 bona, fide
 
 preexisting debt. And in deciding that case, ithe court said, that, in cases of prize, bottomry,, and salvage,’ as well as seaman’s wages, the party entitled to the lien may proceed in admiralty
 
 in personam
 
 against the party holding the proceeds of -property to which the lien had attached.
 

 . But in the cases mentioned by the court, the maritime law attaches an absolute and unconditional lien upon .the property. The possession is not necessary to its validity. Indeed, in cases of seaman’s wages and bottomry, the party entitled to the lien never.has possession; and the same is most commonly the case., where salvage services are rendered.
 

 But it is otherwise in general average.' The party entitled to contribution has no absolute and unconditional. lien upon the goods liable to contribute. The Gaptain has a right to retain them until the general average with which they are charged has been paid or secured. And as he may do this for the security of the party entitled, he must be regarded as his agent in this respect, and exercising his rights. This right
 
 *732
 
 of retainer, therefore, is a qualified lien, to which the party is entitled by the maritime law. But it depends on the possession'of the goods by the master or ship-owner, and ceases when they are delivered to the owner or consignee. It does not fol-. low them into their hands, nor adhere to the proceeds. This is the doctrine not Only in England, but on the Continent .also. It is unnecessary to' refer to the various authorities on this point, as the principal ones are collected in Abbott On Shipping, 507, (margin,) Perkins’s edition, and 3 Kent’s Com.- 244.
 

 ■ In the case before us, the goods, with the bill of lading, were delivered to the consignee, and not to the owner. We do not, however, propose to inquire, whether, upon the facts stated- in the libel, the consignee would be liable for the contribution in any form, but whether a court of admiralty can try the question. - And treating the case as if the consignee stood in thé place of the owner, and was liable to the same extent, we think it was not within the jurisdiction of the court of admiralty. The owner is liable, because, at the time he receives the goods, they are bound to share in the loss of other property by which they have been saved ; and he is not entitled to -demand them until the contribution has been paid. And as this lien upon his goods is discharged by the delivery, the law implies a promise that he will pay it. But it is not implied by the maritime law which gave the lien. It is implied upon the principles of the common law courts, upon the ground that in equity and good conscience he is bound to pay the money, and is therefore presumed to have made ’the .promise when he received the goods. Indeed this case .seems, in its principles, to be nothing more than the'common law action for money had and received, brought in a court of admiralty.
 

 ít .is very much to be regretted, that the jurisdiction of the court of admiralty in .this country is not more clearly defined. It has been repeatedly decided in this court, that its jurisdiction is not restricted to the subjects .over which the English courts of admiralty , exercised jurisdiction at the time ., our Constitution was adopted. But there is no case, nor any principle recognized by this court, that would justify us in-extending it to a subject like the one now before the court. Whether the court of admiralty might not have * proceeded
 
 in rem
 
 to enforce the maritime law before the goods were delivered, is a question which does not arise in this case, and upon which, therefore, we express no opinion. But the case, as presented in the record, we think, is not within the admiralty jurisdiction,; and the judgment rriust therefore..be reversed, and the case remanded to the Circuit Couft,. with directions, to dismiss the libel,-
 

 
 *733
 
 Mr. Justice WAYNE.
 

 I regret that this case has been sent to this court upon the printed arguments of the counsel in the court below, and still more regret that. this court has decided an important constitutional question of admiralty jurisdiction, without .either oral or printed argument.
 

 It is the first time in this court, that such a result has happened; and it was a sufficient reason, in my mind, to restrain this court from action, until after the point had been argued.
 

 A.s I gather the facts of the case from the record, the question of jurisdiction was not argued either in the District or Circuit Court; though, in makipg up the record for this courtj the point was suggested by the counsel for the respondents. It is a curious incident in the history of our jurisprudence, that a constitutional point should have been ruled here, which had neither been argued at the.bar in this court, nor elsewhere; and I think it • will be. thought so much so, that it will not occur again. Such a silent and Uncontested judicial disposition of a question arising under the Constitution is at variance with the interest hitherto shown by our'courts, and by,, the public, in such matters, and does not partake of that watchful and patient in^ quiry concerning constitutional powers, which has been so much the characteristic of the American mind, when either of-the departments of our government has been called upon to exercise them.
 

 I think, too; that this decision should not have beén made at this time ;.for thoügh.a full court was present in our consultation upon this case, one of the judges, Mr. Justice Catron, refused', to deliberate with us upon it, stating as his reason for not doing so, that important points, constitutional and otherwise, were involved, and that the case was only before us upon printed arguments upon the latter. I think he did so with great propriety, and I agree with him, that the rule of the court permitting cáses to be sent here upon printed arguments was not meant to embrace cases involving constitutional questions. That it was not meant to do so, I infer from this being the first case in which it has been done with the practical acquiescence of this court, and from our use, in having hitherto avoided the decision of such questions, except upon oral argument before a full court..
 

 Mr. Justice Catron’s withdrawal left eight of us to act upon •the case, and we were for some time equally divided upon this-point of jurisdiction. It was ultimately disposed of as it has-been by a majority of the court, rather by our acquiescence ini what was thought to be English authorities against the jurisdiction, than from a close and searching scrutiny into the practice
 
 *734
 
 and jurisdiction of courts of admiralty, and how far they were comprehended within our constitutional extension of judicial power to all cases of admiralty and maritime jurisdiction.
 

 Under such circumstances, with every inclination to carry out without further inquiry the decisions of this court, and with unfeigned respect for all of the judges who have made this decision, I hope I shall not be considered as doing any thing at variance with either, if I shall hear argument upon this point of jurisdiction, should such a case occur before me upon the circuit, or if I shall ask, should it ever arise here again, that we may hear argument from counsel upon a point which we had not an opportunity to hear when it was decided.
 

 But my objection to the ruling of the point is greater than to the circumstances under which it has been made.
 

 I think that the case is within our constitutional admiralty and maritime jurisdiction, and that it has been so decided by this court.
 

 An attempt has been made to take it out
 
 of the
 
 case of Sheppard
 
 v.
 
 Taylor, 5 Peters, 675, by making a distinction between eases of absolute and unconditional maritime lien, , and such as are now called qualified cases of lien, to which a party is
 
 entitled by the maritime law.
 
 And it is said, “ in general average, that the party entitled to contribution has no absolute and unconditional lien upon the goods liable to contribute ; but that the captain has a right to retain them until the general average with which they are chargeable has been paid or secured.’7
 

 Besides, not having been able to find, in the books and cases which I have read, any such distinction, (now, I believe, for the first time made,) I have always thought that a lien given by the maritime law, of whatever kind it jpay be, is oné which can be enforced in a maritime court, for the purpose of con-stimmating, for the benefit of all concerned, the equity which raised or created it. For instance, that if a master of a vessel gets a lien upon the saved cargo, in a case of jettison, or voluntary stranding of his vessel, and he is in any way dispossessed of any part of it, either by a freighter or .other person, he may bring a possessory action in a maritime court to regain it, or a petitory libel, if the goods saved have got into the hands of a third person, who claims a right of property in them against the freighter. And further, that if the freighters, in a case of jettison or voluntary stranding of a vessel, disagree, as to what should be their respective contributions, and there is no fixed rule for ascertaining it without suit in the country where the said cargo may happen to be, either the captain having the cargo in possession, or the freighters, or either of them, may go into a maritime court, to have it judicially
 
 *735
 
 determined. And that, a party interested in such a lien may file his libel
 
 in
 
 personam, in a maritime court, against a freighter for his contribution, if he has got possession of his part of the saved cargo, and has removed it beyond the sovereignty in which the court is, so that it may not'be sequestrated or put under arrest, to answer the court’s decree. And it matters not whether the freighter’s possession of the saved goods has been obtained by the delivery of it to him by the master, or otherwise. A lien, or right given to the master
 
 “
 
 to retain the goods, until the general average with which they are chargeable has been paid or secured,” as this court says the master has, has nothing in it of the character of a personal agency, which the master may throw off at his will; for neither, in its beginning nor in its continuance has it a voluntary appointment; but it is a trust, which the. maritime law casts, upon him, from the necessity of the case, in virtue of his official relation to the vessel and cargo, and to those who are the owners of them,.- It is a lien given to the captain by the maritime law, for the purposes of a high equity, produced by necessity ; and it cannot be taken frpm the jurisdiction of a maritime court by any act of a party interested in it; short of what that equity demands; though the parties interested may themselves determine and receive from each other what they may think that equity gives to each of them.
 

 And the foundation of this jurisdiction of a eourt of admiralty in such cases, both
 
 in rem
 
 and
 
 in
 
 personam, is not on. account of the locality of the jettison or stranding, or that it is a thing done at sea; but because, happening at sea, the peril producing it makes new and involuntary relations between the freighters; where there were none before, and for which the interests of commerce require a tribunal, into which, by the law of its creation, all the parties interested may be brought together for settlement. Of course, in what I have said, I have had no reference to the admiralty jurisdiction in England since the time of Charles II., but to that of the maritime courts upon the Continent, and as the practice in them continues to be, and also to what had been the ancient practice and jurisdiction in England on admiralty, until the reign of James.I., notwithstanding the statutes of 13 Richard II., ch. 5, and 15 Richard II., .ch. 3 ; for we know historically, that, until the time of James, the statutes of Richard operated* rather to restrain the usurped jurisdiction of the Court of Admiralty in England, than to limit it, in what rightfully, belonged' to its cognizance.
 

 When, then, we are referred to Abbott on Shipping and to Kent’s Commentaries,, and to the cases cited by them, in support of the conclusion to which this court has here come, con-
 
 *736
 
 ceming the want of jurisdiction, in an American court of admiralty", of a libel
 
 in personam
 
 to enforce a right in a-maritime lien which cannot be enforced
 
 in rem,
 
 in consequence of the removal of the subject-matter of the lien beyond the reach of the court’s monition and attachment, it will be found, by a perusal of Abbott and Kent upon General Average, and the cases cited by those writers, that neither of them is discussing at all the jurisdiction of a court of admiralty, even in England; but that each only states — rand one from the other— what áre the remedies in England for the recovery of the-contributions of a general averagé. The language in Abbott is: —
 

 “ In case of dispute, the contribution may be recovered, either by'a suit in equity only, or by. an action at law, instituted by each individual entitled . to recover, against each • party that ought to pay for the amount of his share.” (<§>'14, p. 610.) And it is admitted that the English jurisdiction in admiralty was not meant by the framers of the Constitution, when the judicial power was extended “ to all cases of admiralty and maritime jurisdiction.” The language Of the court now is, — “It has been repeatedly decided in this court, that its jurisdiction is not restricted to the subjects of which the English courts of admiralty exercised jurisdiction at the time our Constitution was adopted.” We must, therefore, in all cases, whether or not there has been an occasion in our courts for the exercise of jurisdiction in a particular case, look to the maritime courts on the Continent, and to works on admiralty jurisdiction, to determine whether the case in hand is embraced by our constitutional provision.
 

 Nor can I partake, of the regret just expressed, that the jurisdiction of the court of admiralty in this country is not more defined.
 

 I.know at one time it was thought so, but subsequent investigations of it by our judges and jurists, I believe, have given a very general impression to American lawyers, that the constitutional clause, “ all cases of admiralty arid maritime jurisdiction,” is as well and as definitely expressed, for the purpose meant, as it can be, and that it leaves nothing doubtful, except. as to some cases of which the admiralty court in England took jurisdiction, which had been there exclusively within the cognizance of the courts of. common law, and also of other cases in the Continental maritime courts, which did not relate to “things done upon the sea, or to contracts, pleas, and quarrels which were not maritime.” Among the lat-ler is certainly not a case of general average, and, except in England, I believe, the jurisdiction of the maritime courts has always embraced, both
 
 in rem
 
 and
 
 in personam,
 
 “ all cases of
 
 *737
 
 freight, charter-parties,, mariners’ wages, debts due to material-men for the building and repairing of ships,” and all accidents upon the sea, affecting the rights of those having any interest in the cargo of a vessel, or who are in any way connected with her. I do not think that there'is any thing doubtful in the terms used in the Constitution. “ To all cases of admiralty and maritime jurisdiction,” means all cases arising of happening on the sea, growing out of war or commerce, and all cases strictly of maritime contracts, — admiralty jurisdiction meaning originally thoge cases of which the admiral took cognizance in virtue of his office upon, the sea, and maritime, these also, with all others arising out of the perils or accidents upon the sea; trespasses upon it of all kinds; contraéis relating to commerce in which a sea service was to be rendered; contracts for building and repairing of ships, and for money loaned upon bottomry. ■ Now, it having been repeatedly ruled by this court, that its admiralty jurisdiction was not limited' by what was the jurisdiction in England when the Constitution was adopted, the principal difficulty in the way of interpreting the words of the Constitution relating to it has been overcome. And if we will but rid ourselves of those doubts in respect to what are oases for a maritime court caused by the limitation of them in England, I do not think we shall eyer be at a loss to determine what cases are within the admiralty jurisdiction of the courts of the United States; and I believe the whole of them will be found to make no trespass upon, or interference with, the jurisdiction of the other courts of the United States," or with those of the States, either as to the modes of proceeding in them, or as to the suits of which they have cognizance.
 

 Mr. Justice CATRON.
 

 On the question of jurisdiction, for want of which this cause • has been dismissed, I am not satisfied either way, and therefore give no opinion.
 

 Order.
 

 This cause came on to be heard on3 the transcript of the record from the Circuit Court of the United States for the District of Massachusetts, and was argued by counsel. On consideration whereof, it is the opinion of this court, that neither the said Circuit Court, nor the District Court from which this case was removed to’ the said Circuit Court, had jurisdiction of this cause, and that consequently this court has not jurisdiction bu| for the purpose of reversing the decree of the said Circuit Court'j Whereupon, it is now here ordered and decreed by. this court,, that the decree of the said Circuit Court, entertaining jurisdic
 
 *738
 
 tion in this cause, be, and the same is hereby, reversed for the want of jurisdiction in that court-; and that this appeal be, and the same is hereby, dismissed for the want of jurisdiction; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to proceed therein, in conformity to the opinion of this court.