## THE STERLING.

*(District Court, D. Connecticut. June 5, 1884.)*

1. SALVAGE—RELIEF OF GROUNDED VESSEL AT OWNER'S REQUEST, WITHOUT CONTRACT AS TO COMPENSATION FOR SERVICES.

   The service of one in the steam-towing and wrecking business who is sought by the owner of a grounded schooner, and at his request relieves the vessel from its distress after three days' continuous effort, are salvage services, the work being successful, and no contract as to compensation having been made previously to the undertaking it.

2. SAME—LIEN NOT WAIVED THROUGH SALVOR'S INDULGENCE.

   Abandonment or waiver of a salvage lien is not to be inferred from the fact of the owner being allowed the possession of the vessel. The mere forbearance of the libelant to distress the claimant, when nobody has been injured by the delay, is not to be considered as a waiver of the lien.

Libel *in Rem* for Salvage.

*David F. Hollister,* for libelant.

*Morris W. Seymour,* for claimant.

SHIPMAN, J. This is a libel *in rem* for salvage. On the night of May 10, 1883, or early in the morning of May 11, 1883, the schooner Sterling, of the value of $1,200, went ashore on a sandy, pebbly beach near Point no Point, in Long Island sound, and about two miles from Bridgeport light-house, and lay parallel with the beach. The owner applied first to the agent of the libelant, who is the owner of steam-towing and wrecking tugs in Bridgeport harbor, and, being by the agent directed to the captain of one of the tugs owned by the libelant, asked him to go down and pull the schooner off, and how much he would charge. The captain said that he guessed he would go, but that he did not know what he would charge. No bargain was made. On the same day the agent of the libelant went with one of

his steam-tugs and tried unsuccessfully to pull the schooner off, and made two more unsuccessful attempts on the same and on the following day. On the third occasion he took also another tug owned by the libelant, and both tugs made the attempt. At this time a hawser of one of the tugs was broken, and her rail was broken, and she was thereby damaged from eight to ten dollars. On the third day one of the tugs went alone, and this fourth attempt was successful, and the schooner was towed within the harbor of Bridgeport. The agent of the libelant went with the tugs on each occasion for the purpose of doing the work. The attempts could only be made at high tide, and the work was, in effect, a continuous undertaking. The schooner was not in immediate peril when the help was furnished, but she was fast aground, and help was indispensable and was greatly wanted by the owner, who was anxious to get her off before a high south wind should drive her further on the beach. On the last day he was afraid that the tug was not coming, and sent for her, and also displayed in the schooner's rigging a signal for a tow-boat. The claimant promptly asked the libelant for his bill, and that it be made as low as could be, because he had had bad luck that season. A bill of $50 for towing the schooner off the beach was rendered, was approved, and payment was promised. It was, and was considered by the owner to be, a reasonable bill for the service. Payment has been frequently demanded of the claimant, but he had no money, and could not pay. The libelant offered to let the claimant work out the bill, but he was unable to do the work that was wanted. He did, however, make some repairs for the libelant, which were worth $2.25, and which both parties intended should be applied upon the salvage.

The services were salvage services. The schooner was in distress and must have help; the assistance of the libelant's boats was asked by the owner of the schooner, but the services were not rendered upon an agreement for payment for the use of the tug in any event. There is nothing in the case to show that the services of the libelant's tugs were to be paid for in case of non-success. The success of the service and the distress of the vessel are the ground of the libel.

There has been neither abandonment nor waiver of the lien. It was not lost by permitting the owner to be in possession of the schooner, (*The H. D. Bacon*, Newb. 274; *Cutler* v. *Rae*, 7 How. 729,) nor by the subsequent conduct of the salvor. Payment has been frequently demanded, and has been promised when the schooner should be sold. The mere forbearance of the libelant to distress the claimant, when nobody has been injured by the delay, is not to be considered as a waiver of the lien. The owner of the schooner appears alone as claimant, and no *bona fide* purchaser seems to have been injured by the delay in bringing the libel. Under the circumstances of the promise and the delay of payment, interest should be allowed from May 16, 1883, to May 31, 1884, from which $2.25 and interest should be deducted.

Let there be a decree in favor of the libelant for $50.80, and costs.