CRANSTON *v.* A CARGO OF TWO HUNDRED AND FIFTY TONS OF COAL.

*(District Court, D. New Jersey.  December 26, 1884.)*

1. SHIPPING—LIEN FOR FREIGHT—UNCONDITIONAL DELIVERY OF CARGO.
   A ship-owner's or a master's lien for his freight depends upon his detention of the goods until the payment is made, and if he delivers them to the consignee voluntarily, and without notice that he looks to them for the freight and charges against them, he loses all right to enforce a lien upon them by a proceeding *in rem.*

2. SAME—DISTINCTION BETWEEN DISCHARGE AND DELIVERY OF CARGO.
   There is a difference in law between the discharge of a cargo and its delivery. It may be discharged, but cannot be delivered, unconditionally, without divesting the vessel's lien thereon for freight or demurrage.

3. SAME—BURDEN OF PROOF.
   When the cargo has been delivered, the burden of proof is on the libelant seeking to enforce a lien thereon to show that the delivery was not absolute, but qualified by some condition.

4. SAME—EVIDENCE—LIBEL DISMISSED.
   Upon examination of the evidence, *held,* that the freight in the case at bar was delivered without conditions, and that as the consignee has paid the owner its full value before the libel was filed, he was entitled to hold the cargo discharged of the lien.

Libel *in rem.*

On the twenty-eighth of June, 1883, one Oscar Compton, agent, gave a written order to Messrs. Kurtz, Cook & Co. to load the boat T. A. Buckley, of which the above-named libelant was master, with 250 tons of Scranton pea coal, freight 16 cents per ton along-side, captain to hold guy, and three dollars per day, after five fair lay days, for any term not exceeding 30 days, not counting day reporting, Sundays, or holidays; the captain agreeing to tow his boat to any safe place required, to discharge, without extra charge for freight,—the shipper paying the extra towing, if any.  The boat being loaded at Hoboken on the next day, the captain signed bills of lading in triplicate, dated June 29, 1883, to the effect that the Delaware, Lackawanna & Western Railroad had shipped at Hoboken, New Jersey, aboard of his boat, 250 tons of Scranton coal, which was to be delivered to the said Kurtz, Cook & Co., New York, at the rate of 16 cents per ton, along-side.  He reported on the same or on the next day, to Kurtz, Cook & Co., that the cargo was on, and that he was ready for orders. They told him that they had no orders to give, as he had been loaded in pursuance of an order from Oscar Compton, to whom he must report.  He found Compton at his office, 111 Broadway, New York, on the same day, and was told to remain at Hoboken with the cargo, which was a market load, until he had secured a purchaser for the same.  He subsequently received an order from Compton to deliver the coal to the Standard Chemical Company's works, at Twemley Point, New Jersey, which order, after considerable delay, was complied with.  The T. A. Buckley reached the wharf of the consignee on August 3d, and the cargo was discharged on the 8th.  The captain

left for New York on that day, and, without any further conference with the consignee, on August 18th filed a libel *in rem* against the cargo, in this court, for freight and demurrage. The Standand Chemical Company intervenes as owner of the coal libeled, and in its answer sets up that the libelant cannot maintain his suit *in rem* because he made an unconditional delivery of the cargo before claiming or giving notice of any lien thereon for freight or demurrage.

*J. A. Hyland*, for libelant.

*Wilcox, Adams & Macklin*, for respondents.

NIXON, J. Some maritime liens may be enforced, like the *privilegium* of the civil law, by parties who never were in possession; but this is not the nature of the ship-owner's or master's lien upon the cargo for his freight. His right depends upon his detention of the goods until the payment is made. If he parts with them voluntarily, and without notice that he looks to them for the freight and charges against them, he loses all right to enforce a lien upon them by a proceeding *in rem*. A different rule is recognized by the courts of continental Europe, but this is the well-established doctrine in admiralty of the supreme court of the United States. See *Cutler* v. *Rae*, 7 How. 729; *Dupont De Nemours* v. *Vance*, 19 How. 171; *Bags of Linseed*, 1 Black, 113.

The right to maintain this suit depends upon the question whether the coal was delivered to the respondent without condition or notice of the libelant's claim. There is a difference in law between the discharge of a cargo and its delivery. It may be discharged, but cannot be delivered unconditionally, without divesting the vessel's lien thereon for freight or demurrage. The respondent being in possession, the burden of proof is on the libelant that the delivery was not absolute, but qualified by some conditions. A careful examination of the testimony shows the following facts: The libelant received notice while lying at Hoboken that the coal had been sold to the Standard Chemical Company, and was to be shipped to its wharf at Twemley Point. He demurred to the change of destination, and had one or more interviews with Compton (the owner and shipper) demanding more freight than was allowed in the bills of lading. He states that Compton finally agreed to pay him 20 cents per ton, but this Compton denies. Before starting with the load, he called upon the superintendent of the company in New York, (Mr. Reynolds,) and complained to him that Compton was unwilling to pay him the going freight to Twemley Point. He was informed by the superintendent that it was a matter entirely between him and the shipper, Compton; that the company had no interest in it, as they had purchased the coal alongside, and that, if it was not delivered to them free of claim, they would have nothing to do with it. The libelant says that he then and there gave notice to the superintendent that he should retain his lien upon the cargo for the freight if Compton did not agree to his terms. The superintendent, on the other hand, swears that no such notice was

given or intimated, and that the libelant left him with the explicit information that the company had no interest or concern about the freight, and that he must settle all differences with Compton.

The libelant further testifies that when he reached the company's wharf at Twemley Point he again gave notice, on the day of his arrival, to the clerk or agent (Metz) having their business in charge, that he should hold the cargo for his freight if he could not make satisfactory arrangements with Mr. Compton, and that the discharge of the coal took place after such notice. Mr. Metz was called, and makes oath that no such conversation was had; that libelant delivered the cargo to the company, and it was mixed with other coal on hand, and that no reference was made about holding it responsible for freight until the eighth of August, when the whole had been delivered unconditionally. The witness says, that on that day, just as the libelant left for New York, he stated he should see Mr. Compton, and if he had any trouble with him he should look to the coal for his pay. He further testifies that he would not have allowed the coal to be discharged if the libelant had intimated to him that he had an intention or purpose, under any circumstances, to demand payment of the company for the freight.

I find no corroboration of the libelant's testimony in the case, and other facts appear which impair its probative force. The weight of the evidence undoubtedly is that the coal was delivered without conditions. The consignee has paid the owner its full value before the libel was filed, and he is entitled to hold the cargo discharged from the lien. Much time was taken, on the argument, in discussing whether the bill of lading, dated July 10, 1883, was a forgery, or whether it was, in fact, signed by the libelant. I have a decided opinion in regard to this question, but do not deem it necessary to express it here. It has no relevancy to the case, as I am viewing it. It would be pertinent in an action *in personam* against Compton for the freight and demurrage alleged to be due. The present libel must be dismissed, with costs.