## HALLER v. FOX et al.

*(District Court, D. Washington, N. D. July 25, 1892.)*

ADMIRALTY JURISDICTION—MARITIME CONTRACT.

By a written contract a steamboat was hired for one year, the charterer stipulating that she should be used in carrying passengers and freight on the waters of Puget sound, the Straits of Juan de Fuca, and their tributaries; that the charterer should navigate, man, and control her, bear all expenses of navigation, supplies, insurance, and repairs, keep her bills paid so as to prevent liens from attaching, pay the owner a fixed sum monthly for her use, and, in case of her loss, the gross sum of $8,000. To secure performance on his part the charterer gave a bond, with sureties, in the sum of $8,000. *Held* that, though this contract differed in phraseology and form from agreements usual in shipping transactions, it was nevertheless a maritime contract, and a suit on the bond was a matter of maritime jurisdiction.

In Admiralty. Suit *in personam* by Granville O. Haller against Charles L. Fox, Adolph Behrens, and H. W. Baker on a bond given by charterer to owner, conditioned for due performance of a contract for employment of a steamboat for a specified term. The sureties filed exceptions to the libel denying the jurisdiction of the court. Exceptions overruled.

*Burke, Shepard & Woods*, for libelant.

*James Hamilton Lewis*, for respondents.

HANFORD, District Judge. On September 3, 1891, the defendant Fox hired the steamboat Mary F. Perley for a term of one year, and with her owner, the libelant, executed a contract in writing, whereby they stipulated that said steamboat should during said term be employed in carrying passengers and freight upon the waters of Puget sound, the Straits of Juan de Fuca, and their tributaries; that the charterer should navigate, man, and control her, and bear all expenses incident to navigating her and for supplies, insurance, and repairs, and keep her bills paid so as to prevent liens from attaching, and pay said owner for the use of said steamboat $130 per month, and at the end of said term deliver her again to said owner, or, in case of her loss or destruction, pay him the sum of $8,000. To secure performance on his part of the conditions of said contract, said Fox, as principal, with his codefendants as

sureties, gave to the libelant a bond in the penal sum of $8,000, and this suit is brought upon said bond to recover damages in the sum of $5,153.45, with interest. The libel charges that by reason of said Fox having absconded without having paid for the use of said steamboat according to said contract, leaving her in the possession of other parties, who put the libelant to the cost of a suit to recover possession of her, and leaving unpaid bills and demands for supplies furnished and services rendered, and for expenses and charges incident to the use and navigation of said steamboat; and that the libelant was compelled to pay the same, with the fees and costs of a suit *in rem*, brought against her to enforce liens therefor, in order to recover possession of said steamboat, and clear her of liens. The sureties on said bond have appeared and filed exceptions to the libel, alleging that the court is without jurisdiction, for that the subject-matter of the suit is not cognizable in a court of admiralty.

The bond in suit is to be construed as if it contained all the promises and conditions of the contract between the libelant and Fox. By this the respondents assured the libelant that their principal would do and perform the things specified in said contract, and obligated themselves to pay whatever damages should result from any failure on his part. This suit, therefore, is founded upon a contract relating directly to the employment, navigation, supplying, repairing, insurance, and possession of a ship. Contracts touching these several matters are subjects of admiralty jurisdiction in this country. *De Lorio* v. *Boit*, 2 Gall. 398; *The Tilton*, 5 Mason, 465; *The Sloop Mary*, 1 Paine, 673; *The Smilax*, 2 Pet. Adm. 295; *The Seneca*, Gilp. 10; *Insurance Co.* v. *Dunham*, 11 Wall. 1; *The Lottawanna*, (*Rodd* v. *Heartt*,) 21 Wall. 558, 589; *The Windermere*, 2 Fed. Rep. 722; *The Canada*, 7 Fed. Rep. 123, 7 Sawy. 178; *Coast Wrecking Co.* v. *Phœnix Ins. Co.*, 7 Fed. Rep. 242; *The Guiding Star*, 9 Fed. Rep. 524; *Maury* v. *Culliford*, 10 Fed. Rep. 391; *The Vidal Sala*, 12 Fed. Rep. 211; *The San Fernando*, Id. 342; *The Waubaushene*, 22 Fed. Rep. 115; *The Alberto*, 24 Fed. Rep. 381; *The Fannie*, 8 Ben. 429; *The North Cape*, 6 Biss. 505; *The George T. Kemp*, 2 Low. 477.

In the case of *Cutler* v. *Rae*, 7 How. 729, relied upon by counsel for the respondents, a majority of the supreme court held that, in a suit against a consignee to collect a sum claimed as a contribution in general average, on account of goods delivered to him, the principles of the common law must be applied, for by the maritime law, the lien upon the goods was discharged by delivery without creating any personal liability; that the implied promise to pay, arising from the receipt of the goods, was rooted in the common law; hence there was no maritime contract in the case, and a court of admiralty was without jurisdiction. From the nature of the question which the court passed upon the case cannot be regarded as an authority applicable to a case like the one at bar, which is founded upon a maritime contract. Although the contract under consideration differs in form and phraseology from agreements usual in shipping and maritime transactions, its validity as a maritime contract is not, for that reason, at all doubtful. By the maritime law

mere form·is not regarded as being of greater importance than substance and merits. Early in the history of our government that great jurist Mr. Justice STORY, in the case of *De Lovio* v. *Boit,* announced the doctrine which has since received approbation from the bench and bar generally, extending the admiralty and maritime jurisdiction of the courts of the United States to include causes of action arising *ex contractu,* which, in England, owing to the jealousy of the common-law judges and the power of the court of king's bench to issue writs of prohibition, were excluded from the jurisdiction of the high court of admiralty. It was many years afterwards that for the first time a case before the supreme court afforded an opportunity for it to pass upon precisely the same question. But finally, in the insurance case of *Insurance Co.* v. *Dunham,* the opportunity came, and in a learned and exhaustive opinion by the late Mr. Justice BRADLEY the court sanctioned Judge STORY's views, and settled the controversy so long maintained as to the jurisdiction of the admiralty courts of the United States over cases founded upon maritime contracts. Although not referred to directly, *Cutler* v. *Rae* has been considered as overruled by that decision. The district and circuit courts have more than once treated it as an overruled case. See *Coast Wrecking Co.* v. *Phœnix Ins. Co.,* 7 Fed. Rep. 242; *The San Fernando,* 12 Fed. Rep. 342. It is my opinion that this suit is cognizable as an admirälty cause in this court, and that the exceptions to the libel are not well founded. Exceptions overruled.