MORSE et al. v. POMROY COAL CO.

(District Court, D. Rhode Island. July 1, 1896.)

No. 1,027.

1. SHIPPING—GENERAL AVERAGE BOND—SALVAGE.
When the owners of the cargo of a vessel, which has been stranded and rescued by the services of other vessels, give a bond to the owner of such vessel, covering "losses and expenses incurred or to be incurred, which may be a charge by way of general average or otherwise, and providing that claims for tug services or otherwise are subject to approval of an insurance company, or settled by arbitration to which they are a party for us,", such owners are liable for their proportion of a sum which the owner of the vessel, upon a settlement approved by the insurance company, has paid to the owners of the rescuing vessels for their services.

2. SAME—SALVAGE.
The fact that certain part owners of a vessel, which has been stranded, are also stockholders in a corporation which, by means of tugs and lighters owned and hired by it, renders salvage services to the stranded vessel, does not preclude such corporation from receiving compensation for its salvage service.

3. SAME.
A four-masted schooner, laden with 1,309 tons of coal, was stranded, during a gale, in a dangerous and exposed position. The K. Towing Co., which was called to her assistance, employed two ordinary tugs and several barges, lightered about 350 tons of coal, and pulled on the schooner, at every high tide, for 4½ days. It then sent a more powerful tug, which, on the seventh day, pulled the schooner off. The weather was fair during all this time. The K. Co. paid $1,100 for assistance, and the services of the large tug, for the time employed, were worth $1,000 if employed simply in towing. *Held*, that a compensation of $6,000, paid by the owners of the schooner to the K. Co., would not be disturbed at the request of the owners of the cargo, when called on to contribute.

A. Nathan Williams, for libelants.

Charles Theodore Russell, Jr., for respondent.

CARPENTER, District Judge. This is a libel in admiralty by owners of the ship against the owners of the cargo on a general average bond. The only question now to be determined by the court is the amount proper to be allowed for salvage.

The facts shown by the evidence may be stated, using the words of the libelants, as follows:

The four-masted schooner Charles E. Balch, with a cargo of 1,309 tons of coal, on a voyage from Norfolk, Va., to Providence, R. I., ran ashore on the west side of Dutch Island, in a gale, on the afternoon of May 3, 1893. The master notified the libelants, Morse & Co., of New York, who were agents of the schooner, by wire, of the disaster. The members of the firm of Morse & Co. individually owned 11/64 of the schooner. Charles W. Morse was president, and Harry F. Morse treasurer, of the Knickerbocker Steam Towage Company, a corporation organized under the laws of the state of Maine. The towage company has its main office in Bath, Me.; a branch office in New York, at the office of Morse &·Co.; and a branch office in Boston, with James T. Morse as assistant superintendent. Morse & Co. also had a branch office in Bath, at the office of said towage company. The members of the firm of Morse & Co. and their families owned about 2/5 of the shares of the capital stock of the towage company. James T. Morse owned 1/64 of said schooner. Charles W. Morse, upon receipt of the news of the disaster, wired or telephoned James T. Morse, at Boston, to proceed to get the schooner off. James T. Morse arrived at the stranded schooner at about noon on May 4th. The

tug Aquidneck had gone to the schooner's assistance soon after she was stranded, and during the night had swung her stern around, so that she lay easier. James T. Morse took charge of getting the schooner off on his arrival, and, on behalf of the towage company, employed the tugs Aquidneck and Reliance and four scows, for an agreed compensation, to assist in getting the schooner off. They worked assiduously, discharging the cargo into the lighters. When lighters were full, they took the coal to Newport, and sold it. They pulled with the tugs every high tide until May 8th, without succeeding in starting the schooner. On May 8th, Charles W. Morse dispatched the large powerful ocean tug B. W. Morse, owned by the towage company, to assist in getting the vessel off. The B. W. Morse arrived at the stranded schooner at about midnight of May 8th, and, with the Aquidneck, pulled that tide without moving the schooner. They continued to discharge cargo, and on the day tide of May 9th, with the Aquidneck pulling the schooner down by a line from her mast head, with the B. W. Morse pulling ahead, and the crew of the schooner heaving in on the anchor chain, they succeeded in moving the schooner about once her length. They continued to discharge cargo, and, by both tugs pulling the same way on the high tide of the morning of May 10th, the schooner was pulled off. The B. W. Morse, the same morning, returned to New York. She was gone from New York City 2½ days. About 350 tons of coal were discharged, of which about 150 tons were sold in Newport, and the balance put back into the vessel. The vessel was then towed to Providence by the Aquidneck. The libelants took the average bond declared on, and delivered cargo to respondent, the owner thereof. The vessel lay in a dangerous place, and, in case of a storm, was liable to fill with water, and bilge. The weather was fair during all the time she was ashore after the first night. The master and crew remained in the vessel. The towage company paid in cash, for the service of the tugs, Reliance, Aquidneck, and lighters, and their crews, a little over $1,100. It claimed for the services rendered, including these expenditures, the sum of $8,500. After an unsuccessful effort to arbitrate the matter, the libelants, with the approval of the underwriters on the vessel, compromised with the towage company for the sum of $6,000.

The respondent states his defense under the three following propositions:

(1) That this is a personal suit, for a general average contribution by the shipowners. No sum or proportion of a sum voluntarily paid by the shipowners as a salvage reward upon all interests can be recovered against the cargo if paid without its knowledge and consent.

(2) That the relation of the tug B. W. Morse and owner to the schooner Charles E. Balch was such, in equity, as to preclude any claim for a salvage reward for services rendered by the former to the latter vessel.

(3) That the amount charged in general average to the cargo as salvage was fixed without the knowledge of its representatives, and is excessive and unjust.

On the first point, the libelants cite 1 Phil. Ins. 338, 362; Insurance Co. v. Parker, 2 Pick. 1; Heyliger v. Insurance Co., 11 Johns. 85; McAndrews v. Thatcher, 3 Wall. 347; Desty, Shipp. 302, 310; Lown. Gen. Av. (4th Ed.) 149, 150, 157; Hingston v. Wendt, 1 Q. B. Div. 367; Montgomery v. Tyson, 1 Low. 133, Fed. Cas. No. 484; Akerblom v. Price, 7 Q. B. Div. 129; 3 Kent, Comm. 244; Cutler v. Rae, 7 How. 729; Dupont v. Vance, 19 How. 162; Abb. Shipp. (8th Ed.) 507; Scaife v. Tobin, 3 Barn. & Adol. 523; Briggs v. Association, 13 Q. B. 167; Strong v. Insurance Co., 11 Johns. 323; Kenn. Civ. Salv. 186; 2 Arnould, Ins. 949. The respondent cites Gourl. Gen. Av. 378; Carv. Carr. by Sea, 394, and cases cited; Jones, Salv. 121; The Pyrennee, Brown & L. 189; The Mary Pleasants, Swab. 224; The Raisby, 10 Prob. Div. 114, 116. The question, perhaps, does

not admit of extended discussion. It seems to me that the better opinion is that the cargo is liable to contribute to salvage, whether salvage be called a "general average claim" or otherwise. In this case, also, the bond covers losses and expenses, incurred and to be incurred, which "may be a charge by way of general average or otherwise," and provides that "claims for tug services or otherwise are subject to approval of the Delaware Insurance Company, or settled by arbitration to which they are a party for us." I hold that the respondent is bound by the settlement and adjustment.

On the second point of defense, I do not find that there is any equity which should bar the towage company from any part of the recovery here sought. The owners and the salvors are not the same, and the fact that the owners and members of their families are owners in the towage company does not seem to me to be at all material. There are two distinct enterprises in the management and profits of which certain persons, with others, are interested; and they should be treated as distinct parties.

On the third point, the respondent, claiming that a fair sum for salvage is to be here assessed, urges that as the vessel and cargo were finally saved by lighterage and towage only, and as the weather was fair, and no danger incurred by the salvors, a much smaller sum should be fixed than that paid by the owners. It is to be remembered, however, that the vessel was in a dangerous place; that, with a change of weather, she might go to pieces; that there was paid $1,100 for assistance; and that the fair value of the time and services of the tug B. W. Morse was upward of $1,000, if she be considered as employed simply in towing. I am not inclined to disturb the allowance.

The case may stand for a decree in accordance with these findings, and other questions which may arise being reserved for further hearing.