EADIE v. NORTH PAC. S. S. CO. et al.

(District Court, N. D. California, First Division.   July 10, 1914.)

No. 15636.

1. ADMIRALTY (§ 10*)—JURISDICTION—"MARITIME CONTRACTS"—BOND CONDITIONED ON PERFORMANCE OF CHARTER PARTY.

A bond executed by a surety company, conditioned ·for the payment of any damages arising from the breach by the charterer of the covenants and conditions of a charter party, is not a "maritime contract," but a common-law obligation for the payment of damages in case of default in the performance of such a contract by another, and a suit thereon is not within the jurisdiction of a court of admiralty.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 131–149, 185–190; Dec. Dig. § 10.*

For other definitions, see Words and Phrases, First and Second Series, Maritime Contract.]

2. SHIPPING (§ 58*)—SUIT FOR BREACH OF CHARTER—DAMAGES.

An averment, in a libel by the owner of a vessel against a time charterer, filed before the expiration of the charter term, that respondent has refused to continue the use of the vessel, does not state a cause of action for the recovery of damages beyond the charter hire as it becomes due.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 233–244, 314, 327; Dec. Dig. § 58.*]

In Admiralty.   Suit by William Eadie against the North Pacific Steamship Company, the Illinois Surety Company, and the freights of the British steamer Cetriana.   On exceptions to libel.   Exceptions sustained.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for libelant.

C. H. Sooy, of San Francisco, Cal., for respondent North Pac. S. S. Co.

F. R. Wall, of San Francisco, Cal., for respondent Illinois Surety Co.

DOOLING, District Judge.   The libel herein sets forth that libelant chartered its vessel, the Cetriana, to the libelee North Pacific Steamship Company for the period of 12 months from the date of the delivery of said vessel, at an agreed charter hire of $75 per day, said vessel to be delivered between January 1 and 5, 1914.   The charter party is made a part of the libel, and provides, among other things:

"This charter party shall only become effective after the second party shall have furnished a duly executed bond from a bond or surety company, in a form satisfactory to said party of the first part, binding said surety in the sum of $15,000, United States gold coin, for the faithful performance of each and all of the provisions, covenants, and agreements in said charter party, on the part of said party of the second part to be performed."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The libel also alleges the execution of such bond in the sum of $15,000 by the libelee Illinois Surety Company, which bond is also made a part of the libel, and contains the following provisions.

"The condition of the above obligation is such that, whereas, the said North Pacific Steamship Company and the said William Eadie have entered into a contract of charter party under date of December 22, 1913, wherein and whereby the said William Eadie chartered to the said North Pacific Steamship Company, a corporation, the steamship Cetriana, under the terms and conditions in said charter party set forth, a copy of which charter party is hereto attached and made a part hereof as fully as if set forth at length herein: Now, therefore, if the said North Pacific Steamship Company, a corporation, shall well and truly keep and perform all the covenants, conditions, and agreements in said charter party on its part to be kept and performed, then this obligation to be void; otherwise, to remain in full force and effect: Provided, however, this bond is executed upon the express condition precedent that it shall not extend or cover the terms and conditions of the seventh paragraph of said charter party, and the surety hereunder shall not be liable on account of any accident or personal injury to any person whatsoever."

The libel further avers the failure of the libelee North Pacific Steamship Company to pay the charter hire for the months of February, March, and April, 1914, amounting to the sum of $6,675, and that the said steamship company has also incurred indebtedness in and about the vessel, and which is a lien thereon, amounting to $472.07, and which under said charter party the said steamship company should have paid. It is also averred in article IX of said libel:

"That the said North Pacific Steamship Company has further refused to continue the use of the said vessel for the balance of said charter, by reason of which said libelant has suffered further damage, the exact amount of which said libelant is at this time unable to definitely allege, but on his information and belief alleges the same will exceed the sum of $10,000."

The libel was filed April 7, 1914, and seeks to recover the sums mentioned from the North Pacific Steamship Company on the charter, and from the North Pacific Steamship Company and the Illinois Surety Company on the bond, and from certain freights under the provisions of the charter party. With the last we are not at present concerned.

The Illinois Surety Company has filed exceptions to the libel, on the grounds, first, that as to it the court has no jurisdiction because of the nonmaritime nature of the bond sued upon; and, second, because article IX is surplusage, irrelevant, and impertinent, in that it alleges damages for a time subsequent to the filing of the libel. The North Pacific Steamship Company has also filed exceptions to the libel on substantially the same grounds.

[1] The main question presented, therefore, has to do with the jurisdiction of the court to entertain the libel in so far as it is based upon the bond given by the Illinois Surety Company. This bond is in form an ordinary common-law obligation, the condition of which is that the North Pacific Steamship Company shall well and truly keep and perform all the covenants, conditions, and agreements in the charter party on its part to be kept and performed. The covenants of the charter party are many and varied, but the obligation of the surety is not to perform these covenants, but to pay such damages as result from their nonperformance. The extent of the jurisdiction of the admiralty courts of the United States over contracts has never been

clearly and definitely determined. But the Supreme Court, in Insurance Co. v. Dunham, 78 U. S. (11 Wall.) 26, 20 L. Ed. 90, decided in 1870, lays down the rule that the true criterion by which to test the admiralty jurisdiction is the nature and subject-matter of the contract, as whether it is a maritime contract, having reference to maritime service or maritime transactions. Whatever difficulty arises in determining what contracts are subject to the admiralty jurisdiction arises, of course, out of the application of this criterion to the matter immediately in hand, because in dealing with specific contracts it is not always easy to determine whether they have to do with maritime service or maritime transactions within the meaning of the rule as laid down by the Supreme Court. In the case of Pacific Surety Co. v. Leatham & Smith T. W. Co., 151 Fed. 440, 80 C. C. A. 670, the Circuit Court of Appeals of the Seventh Circuit decided in 1907 that a bond similar to the one here in suit was not the subject of admiralty jurisdiction, holding that such a contract is not for maritime service, nor does its performance involve maritime transactions, because its sole obligation is for payment of money arising out of a breach of the terms of the charter party, and in no sense for the performance of such terms. On the other hand, Judge Hanford, in Haller v. Fox (D. C.) 51 Fed. 298, decided in 1892, held such a bond to be a maritime contract, and a suit thereon to be a matter of maritime jurisdiction, using the following language:

"The bond in suit is to be construed as if it contained all the promises and conditions of the contract [charter party] between the libelant and Fox. By this the respondents assured the libelant that their principal would do and perform the things specified in said contract, and obligated themselves to pay whatever damages should result from any failure on his part. This suit, therefore, is founded upon a contract relating directly to the employment, navigation, supplying, repairing, insurance, and possession of a ship. Contracts touching these several matters are subjects of admiralty jurisdiction in this country."

But is the suit on the bond founded upon a contract relating to the employment, navigation, etc., of a ship? Is it not rather founded upon an obligation to pay money, and to pay money alone, which obligation becomes effective only upon the failure of another to perform a contract relating to the employment, navigation, etc., of a ship? The charter party is undoubtedly a maritime contract, and the admiralty has jurisdiction of a suit based thereon; the bond is nothing more than a common-law obligation, not that the terms of the charter party shall be complied with, but that upon a failure to comply with them the surety will pay such damages as the owner of the vessel may have suffered by reason of such failure. It was long an open question in this country whether a policy of marine insurance was the subject of admiralty jurisdiction, and it was not until 1870 that the Supreme Court, in Insurance Co. v. Dunham, above cited, finally set that question at rest. But in determining that a suit on such policy was maintainable in the admiralty, the court bases its decision on the fact that the contract of insurance sprang originally from the law maritime, and the further fact that it is a contract or guaranty that "the ship or goods shall pass safely over the sea, and through its storms and its many casualties, to

the port of its destination," and, paralleling this contract with that of affreightment, holds that "the object of the two contracts is, in the one case maritime service, and in the other maritime casualties."

But in the case of the bond in suit we have an obligation based neither upon maritime service nor upon maritime casualties, but upon the default of a third person in the performance of certain stipulations to which the surety was in no sense a party. Libelee Illinois Surety Company did not agree to perform the services to which the North Pacific Steamship Company was bound by the terms of the charter party, nor was it authorized to perform such services either by the charter party or the bond. The bond is not for the performance by the surety of any maritime service, nor does its obligation depend upon any maritime contingency or casualty. It becomes effective solely upon the default of the charterer to perform his agreement, and even then its obligation would be resolved if the charterer should pay the damage occasioned by such default, as it is in law bound to do. The fact that the practice of executing such bonds in connection with charter contracts is of comparatively recent origin is not sufficient to confer jurisdiction upon the admiralty court, if such jurisdiction does not arise out of the nature of the contract itself. Unless this court has such jurisdiction, the surety is entitled to defend in a court of common law, where he may, if he so desire, submit his defense to a jury.

I am therefore of the opinion that the case of Pacific Surety Co. v. Leatham, etc., supra, is supported by the better reasoning, and that the exceptions to the libel on the ground of lack of jurisdiction must be sustained.

[2] As to the second exception, based upon the averments of article IX of the libel, I am of the opinion that nothing stated in this article shows that libelant would be entitled to anything more than the charter hire as it became due.

The exceptions are therefore sustained.