COMPAGNIE FRANCAISE DE NAVIGATION A VAPEUR v. BONNASSE et al. (IRVING BANK–COLUMBIA TRUST CO., Garnishee).

Circuit Court of Appeals, Second Circuit.
May 16, 1927.

No. 313.

1. Shipping ⬡⟹200—General average bond to shipowner for benefit of charterer held "maritime obligation" as to jurisdiction.

Bond procured by owner of ship and delivered to charterer, to cover ship's liability on general average loss, held a "maritime obligation" as affects jurisdiction of admiralty court.

[Ed. Note.—For other definitions, see Words and Phrases, Maritime Obligation.]

2. Shipping ⬡⟹200—Obligation of bank on general average bond issued by another bank, whose obligations it had assumed, held maritime obligation, as affecting jurisdiction of admiralty court.

Where after damage constituting a general average loss, owner procured a general average bond from particular bank in favor of charterer, and where another bank thereafter took over assets of bank issuing bond and assumed payment of all its banking liabilities, held, liability of the second bank on the bond was a maritime obligation, as affecting jurisdiction of admiralty court in which moneys belonging to such second bank were garnished.

3. Admiralty ⬡⟹10—If maritime obligations can be separately adjudicated, it is no objection to admiralty jurisdiction that contract is not wholly maritime.

It is no objection to admiralty jurisdiction that contract is not wholly maritime, where maritime obligations thereunder may be separately adjudicated.

Campbell, District Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Action by the Compagnie Francaise de Navigation a Vapeur against Leon Bonnasse and others, doing business under the firm names and styles of La Banque Bonnasse and La Banque Privée, wherein the Irving Bank–Columbia Trust Company was garnisheed. From a decree (15 F.[2d] 203) for plaintiff

against both defendants and the garnishee, and from a denial of a motion to vacate, the latter appeals. Affirmed.

See, also, 15 F.(2d) 202.

Appeal from a decree of the District Court for the Southern District of New York, awarding damages against both respondents, which the Irving Bank, as garnishee, was directed to pay from a deposit with it to the credit of La Banque Privée, and from an order denying a motion of said Irving Bank to vacate such final decree. The garnishee alone appealed.

The libel was in personam by a French corporation, against a banking firm, La Banque Bonnasse, made up of three French citizens, and a French corporate bank, La Banque Privée. It alleged that the libelant had been time charterer of a ship owned by one Diacakis, a Greek, and that in October, 1917, while the ship was still on charter, a fire broke out, which together with the water used to extinguish it, caused damage to the cargo, constituting a general average loss. To secure the contribution which might be awarded against the ship, Diacakis procured from the respondents, La Banque Bonnasse, and delivered to the libelant, a general average bond in its favor in the sum of $55,000. The ship's contribution was fixed by the adjusters at more than the amount of the bond, and the libelant paid more in settlement of the claims of the cargo. On September first, 1921, the respondent, La Banque Privée, took over the banking assets of La Banque Bonnasse upon an agreement to assume all their banking liabilities.

A monition issued against both respondents with clause of foreign attachment, and as neither could be found in the Southern district of New York, the marshal levied upon supposed credits of each with the garnishee, the Irving Bank, which made return that it owed nothing to La Banque Bonnasse, but that La Banque Privée had with it a deposit in the sum of $100,000. Both respondents unsuccessfully moved to vacate the attachment and thereafter appeared generally in the suit. Having failed to answer, a decree pro confesso was taken against them with direction to the Irving Bank to satisfy the liability of La Banque Privée, out of the deposit.

Thereupon the Irving Bank, thinking the decree an inadequate protection, moved to vacate the direction that it satisfy the decree, on the ground that the court had no jurisdiction over La Banque Privée. This motion was denied and the garnishee appealed from the order entered upon it and from the final decree itself.

Bigham, Englar & Jones, of New York City (Oscar R. Houston, D. Roger Englar and Charles F. Quantrell, all of New York City, on the brief), for appellant.

Loomis & Ruebush, of New York City (Homer L. Loomis and Reginald B. Williams, both of New York City, on the brief), for appellee.

Before L. HAND and SWAN, Circuit Judges, and CAMPBELL, District Judge.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] We have no doubt that the bond given by La Banque Bonnasse was a maritime obligation. Dike v. The St. Joseph, Fed. Cas. No. 3,908; The Barque San Fernando v. Jackson (C. C.) 12 F. 341; Coast Wrecking Co. v. Phœnix Ins. Co. (C. C.) 13 F. 127. Cutler v. Rae, 7 How. 729, 12 L. Ed. 890, held that the obligation itself was not maritime, in which respect it has since been questioned, but did not doubt the jurisdiction of the admiralty in rem. Where a bond for contribution is given to release the res, or to prevent its arrest, admiralty must have jurisdiction over the substitute, or it cannot proceed by its usual course, but must resort to the cumbersome and expensive expedient of keeping the res in its custody and selling it under the decree. Its jurisdiction can be exercised only in a suit against the obligor in personam, a possibility itself contemplated in Cutler v. Rae, at page 731. If, therefore, the deposit in the Irving Bank had been to the credit of La Banque Bonnasse, there could have been no doubt of the admiralty jurisdiction, or of the propriety of the attachment. However, as it was La Banque Privée which was the depositor, and as its deposit could not be attached for the debt of La Banque Bonnasse, unless the obligation of La Banque Privée was itself maritime, the district court had no jurisdiction, the attachment was invalid, and the decree gives no protection to the garnishee. For this reason it becomes necessary to determine whether that obligation was maritime.

Somewhat analogous cases come up in various ways. There are those in which the respondent has made himself surety for a charterer. Pacific Surety Co. v. Leatham, 151 F. 440 (C. C. A. 7); Eadie v. North Pac. S. S. Co. (D. C.) 217 F. 662. Jurisdiction is refused in such cases on the ground that the surety has not agreed to perform the principal's maritime obligation, but merely to pay a sum of money in case of his default. This result is perhaps not inevitable. Haller v. Fox (D. C.) 51 F. 298. Fox v. Patton (D. C.) 22 F. 746, was the case of a promise to pay dam-

ages upon the breach of the ship's obligation after the breach had occurred. The dictum in The Centurion, Fed. Cas. No. 2,554, like the decision in Ramsay v. Allegre, 12 Wheat. 611, 6 L. Ed. 746, which it followed, concerned only a case where the maritime obligation had been extinguished by a note, draft or some other non-maritime obligation. In the case at bar it chances that the performance of the maritime obligation was itself the payment of a sum of money, so that the fact that the promise of La Banque Privée was also to pay money is irrelevant. Like a policy of marine insurance, such a promise may be cognizable in the admiralty. Had the promise been an indemnity, that is, to make whole La Banque Bonnasse, if it were called upon to pay, the result might be otherwise. Similarly if it had been to pay the libelant if La Banque Bonnasse did not pay. Pacific Surety Co. v. Leatham, supra. But the promise was neither of these; it was to assume the performance of the bond, to become the principal obligor, to do the very act promised by La Banque Bonnasse, to substitute the promisor's performance for the promisee's. The payment of the ship's contribution was equally a maritime performance whoever paid, and the promise as much within the cognizance of the admiralty as the bond. Therefore, if La Banque Privée had assumed only that obligation, we should have no difficulty in supporting the decree and the attachment.

[3] That was not, however, the case, for the assumption covered all the obligations of La Banque Bonnasse, and obviously those would in the nature of things have been only in small part maritime. It is especially for this reason that the garnishee challenges the attachment, invoking the rule that a contract to be within the jurisdiction of the admiralty must be wholly maritime. The rule has at times been so stated in the books, and the statement is usually not misleading. Grant v. Poillon, 20 How. 162, 15 L. Ed. 871; The Ada, 250 F. 194 (C. C. A. 2); The Pennsylvania, 154 F. 9 (C. C. A. 2). The reason for it is plain enough. A contract both maritime and non-maritime is ordinarily indivisible, so that the rights of the parties cannot be adjusted separately, those maritime in the admiralty, and the rest elsewhere. Admiralty must refuse to assume any jurisdiction over it at all, because it must either ignore the principles of the law of contract, or extend its powers beyond their constitutional scope. But in so far as the maritime obligations may, consistently with those principles, be separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto. This is clearly intimated

in Turner v. Beacham, Fed. Cas. No. 14,252, and The Pennsylvania, 154 F. 9 (C. C. A. 2), though the decisions did not require such a holding. The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest.

In the case at bar the libelant could recover at law or in equity against La Banque Privée, whether its promise created a direct obligation to Bonnasse's creditors, as is the law in the majority of the states, or whether it did not. National Bank v. Grand Lodge, 98 U. S. 123, 25 L. Ed. 75. That question depends upon the law of the forum, Willard v. Wood, 135 U. S. 309, 10 S. Ct. 831, 34 L. Ed. 210; Johns v. Wilson, 180 U. S. 440, 21 S. Ct. 445, 45 L. Ed. 613, and the French law was not pleaded. If the promise did not create a direct obligation, still the libelant could enforce it in equity by joining both the promisor and the promisee. Keller v. Ashford, 133 U. S. 610, 10 S. Ct. 494, 33 L. Ed. 667; Union Mutual Ins. Co. v. Hanford, 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118. As both were in fact joined and as both have appeared, the remedy would have been available in a court administering legal and equitable remedies, no matter which rule obtains.

Nevertheless, the nature of the obligation might make a difference in respect of the jurisdiction of admiralty, since the divisibility of the remedy might turn upon whether the obligation was direct or indirect. If the creditor has a direct obligation running from the promisor to himself, there would be no difficulty. The single promise is broken into several obligations, quite as though there had been a separate promise for each. The libelant at bar, a maritime creditor, would not involve in his controversy the obligation to any other creditor. If on the other hand the creditor's right is derivative through the promisee, and if the promisor has defaulted only as regards the debt of the creditor who sues, the promisee, or through him the promisee's creditor, may presently sue upon the existing default though the promisor may subsequently be guilty of other defaults. Perhaps, indeed, though the promisor has defaulted on several debts, each creditor may bring his several suit, but we do not find it necessary to pass on that question. Under the allegations of this libel, the only default which appears is upon the promise to pay the libelant, and we have no right to assume that there were any others. Therefore, the promisee might have sued upon that default alone without involving any

part of the promise that was not maritime. If the promisee could so have sued, the libelant could sue, joining both promisee and promisor, and the suit would neither deprive the promisor of any rights guaranteed him by the law of contract, nor improperly extend the jurisdiction of admiralty.

The result is certainly to be desired. The assignment by a surety of all its assets to its successor upon assumption by the latter of its debts, ought not, if it can be consistently avoided, deprive creditors of the forum open to them against the assignor. The parties intend the assignee to step into the position of the surety, and to be subject to the same remedies as he. So far as this can be done, the law should effect that intention. We need not consider whether the same result could be reached by treating the general appearance of La Banque Privée as giving jurisdiction over it in the nature of an attachment. Pennington v. Fourth National Bank, 243 U. S. 269, 37 S. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159.

We have not ignored the failure of the libel to allege what the French law is. Strictly we have no power to make any assumption on that subject, but as the point was not raised in the assignments of error, we are free to disregard it.

Decree affirmed.

CAMPBELL, District Judge (dissenting). I find myself unable to concur.

Assuming that the agreement made by Bonnasse, dated February 11, 1918, was. a maritime obligation, that is not controlling.

The obligation of La Banque Privée, as alleged in the libel, arises under the agreement with Bonnasse of September, 1921, which provided that La Banque Privée purchased all the assets and assumed all the liabilities of the banking business of La Banque Bonnasse.

The liabilities of a banking business obviously were in small part maritime, and it must be assumed that by the use of the words "all liabilities" the parties to that agreement intended to cover more than the liability of La Banque Bonnasse to the libelant, and that said agreement was not solely for the benefit of the libelant.

It therefore follows that the agreement between La Banque Bonnasse and La Banque Privée was not wholly maritime, and for that reason was not enforceable in the admiralty. The Ada (C. C. A.) 250 F. 194; The Pennsylvania (C. C. A.) 154 F. 9; Fox v. Patton (D. C.) 22 F. 746; The Centurion, Fed. Cas. No. 2,554; Plummer v. Webb, Fed. Cas. No. 11,- 233; Insurance Co. v. Dunham, 11 Wall. 1, 35, 20 L. Ed. 90; Pacific Surety Co. v. Leatham & Smith T. & W. Co. (C. C. A.) 151 F. 440; Eadie v. North Pac. S. S. Co. (D. C.) 217 F. 662.

The promise of La Banque Privée to pay all the debts of La Banque Bonnasse, which included that of the libelant, was not for that reason maritime but a new contract with La Banque Bonnasse, enforceable, if at all, by the libelant only in a court of law or in equity, and therefore the District Court, as a court of admiralty, was without jurisdiction to enter any decree in the action against La Banque Privée or the garnishee appellant.