## COMPAGNIE FRANCAISE DE NAVIGATION A VAPEUR v. BONNASSE et al.

(District Court, S. D. New York. July 21, 1926.)

1. Shipping ⬤186.

Time charterer, who had issued bills of lading and was in position of bailee of cargo, *held* to have remedy against vessel for cargo damage which he paid, including right to recover general average.

2. Shipping ⬤198—Charterer, settling claims of cargo owners, held not a volunteer as affecting his right to recover on general average bond furnished by owner.

Obligation of ship to cargo owners *held* personal obligation of charterer, who had issued bills of lading, and hence charterer, settling claims of cargo owners after libel of ship, was not acting as a volunteer, as affecting his right to recover on general average bond furnished by shipowner.

3. Shipping ⬤198—Subrogation ⬤23(7).

Charterer, paying claims of cargo owners, who had libeled vessel and for which he was secondarily liable, *held* subrogated to rights of cargo owners enforceable against general average bond given by owner.

In Admiralty. Libel by the Compagnie Francaise de Navigation a Vapeur against Leon Bonnasse and others, doing business under the firm names and styles of Banque Bonnasse and Banque Privee. On motion by garnishee under a process of foreign attachment to vacate a decree in favor of libelant. Motion denied.

See, also, 15 F.(2d) 202.

Loomis & Ruebush, of New York City (Homer L. Loomis and Reginald B. Williams, both of New York City, of counsel), for libelant.

Bigham Englar & Jones, of New York City (D. Roger Englar, Oscar R. Houston, and Charles F. Quantrell, all of New York City, of counsel), for garnishee.

AUGUSTUS N. HAND, District Judge. [1] This is a motion by the garnishee under a process of foreign attachment to vacate the decree in favor of libelant. It may be that the time charterer as such is not liable for general average, but as the carrier who issued the bills of lading I think the charterer is in the position of a bailee of the cargo, who had a remedy against the vessel for cargo damage,

including the right to recover general average. Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770. I cannot see how the right of such a charterer to recover upon a general average bond differs from its right to enforce a lien against a vessel for failure to stow cargo properly. Milburn v. Nord-Deutscher Lloyd, 58 F. 603. The bond here is not to indemnify, but to pay general average.

The owner of the vessel, by the terms of the charter party, undertook "to pay to the libelant such sums as might thereafter be found to be due from the ship in general average, provided, however, that the total payment to be made by said respondents was not to exceed the sum of $55,000. * * *" The bond took the place of a deposit, and exonerated the ship as between it and the charterer. This case is to be distinguished from Pacific Surety Co. v. Leatham, 151 F. 440, 80 C. C. A. 670, because the agreement here was to pay the general average, and not merely to indemnify.

The charterer is enforcing the rights of the cargo owner. It is doing this, not only through a right of subrogation founded on the customary liability of the vessel to pay its share of general average, but also upon the provision in the charter party whereby the vessel owner covenanted to make good to "the libelant the various losses that might be sustained by said cargo during the course of the voyages that might be performed under said charter, including all contributions to be made by the ship in general average."

[2] The respondents insist that the libelant, in paying the cargo owners, was a mere volunteer; but it was paying the primary obligation of the shipowner, due not only by customary law, but as between it and the charterer by the express terms of the contract. This obligation, as I have said, was on behalf of the cargo owners against the ship, but by virtue of the relations of carrier and freighter was a personal obligation of the libelant. When the libelant has performed its personal obligation to the cargo owners, the shipowner becomes bound by the covenant in the charter party to reimburse the libelant and free the ship from any lien which might interfere with the venture created by the charter party.

[3] The payment by the libelant to relieve its obligation to the cargo owners was a payment which should have been made by the ship on general principles, and especially because of the terms of the charter party. It was "payment by one secondarily liable, which by familiar equitable principles subrogated the libelant to the rights of the cargo owners and made them enforceable against the general average bond taken in place of the ship. It was also a payment by one secondarily liable in order to get rid of the claims of the cargo owners which were calculated to interrupt voyages of the vessel. This payment was made in a case where it should have been made by the shipowner in performance of a maritime obligation created by the charter-party in favor of the libelant. This latter maritime obligation could have been enforced in rem against the ship. The party secondarily liable to the cargo owners was, I think, justified in paying it, not as a volunteer, but to relieve both the ship and itself from legal liability.

Now that the case has passed to final decree, there can be no need for requiring payment into the registry of the court, and the decree should stand in the form rendered.

The motion to vacate is denied. Settle order on notice.