**NORTHERN STAR S. S. CO. OF CANADA,
Limited, v. KANSAS MILLING CO.
et al.**

No. 150–225.

District Court, S. D. New York.

Oct. 22, 1947.

Dow & Symmers, of New York City (Daniel L. Stonebridge, of New York City, of counsel), for libelant.

Neil P. Cullom, of New York City (Neil P. Cullom, of New York City, of counsel), for respondent, Kansas Milling Co., appearing specially.

LEIBELL, District Judge.

On June 16, 1947 the Northern Star Steamship Company, a Canadian corporation, filed a libel against the respondents, the Kansas Milling Company (a Kansas corporation) and the Dawson Export Company (a Washington, D. C. corporation) alleging:

"Fourth: That the libellant through its agents, Ocean Freighting & Brokerage Corporation, entered into negotiations in the City and State of New York for the chartering of the S. S. Captain Polemus with the Scanamerican Chartering Corporation. which was acting as agents for the respondents Kansas Milling Company and Dawson Export Company.

"Fifth: That on or about December 31, 1946, the vessel was fixed for charter to Kansas Milling Company under the terms and conditions set forth in the fixture, a copy of which is annexed hereto, marked exhibit A, and made a part hereof; that pursuant to the terms and conditions of said fixture, the charter party attached. hereto, marked Exhibit B, and made a part hereof, was signed by the libelant and forwarded to the respondent's agent for execution.

"Sixth: That subsequently, Scanamerican Chartering Corporation notified libellant, through its agent, Ocean Freighting & Brokerage Corporation, that the Kansas Milling Company was not the charterer, but was guaranteeing the performance of the charter for Dawson Export Company of Washington, D. C.

"Seventh: That the respondent, Kansas Milling Company, on or about January 7, 1947, through its agents, notified the libellants agent that the charter party was cancelled."

On June 16, 1947 process in personam issued, with a clause of Foreign Attachment, and subsequently on June 27, 1947 the United States Marshal filed his return on the attachment, showing that funds of the respondent, the Kansas Milling Company had been attached in the amount of $39,847.59. But this is still a suit in personam. Asiatic Petroleum Corporation v. Italia Societa, 3 Cir., 119 F.2d 610, at page 613.

A copy of the "fixture", Exhibit A, is set forth in a footnote.[1] The draft of the charter party, prepared by libelant's attorney, is dated December 31, 1946, and names the Kansas Milling Company as the charterer, but neither respondent ever signed it.

On July 25, 1947 Kansas Milling Company filed exceptions to the libel on the grounds that the facts averred therein were insufficient to constitute a cause of action; that they did not constitute a claim within the admiralty and maritime jurisdiction of the court; and that the court should decline jurisdiction on the ground that all the parties to the suit are foreign corporations and the convenience of the court would not be served by accepting jurisdiction.

Thereafter on October 7, 1947 the respondent, Kansas Milling Company, moved the court for an order dismissing the libel on the ground that the court should decline to assume jurisdiction of this controversy wholly between citizens of foreign states, and for an order sustaining the exceptions.

With respect to the respondent's first exception, I believe that the libel states a claim upon which relief can be granted. It appears from the libel that the libellant's vessel was "fixed for charter to the Kansas Milling Co.", through agents for both parties, that the "charter party was cancelled", and that "in reliance upon the fixture" the libellant sustained certain damages. It sufficiently sets forth a cause of action against the respondent, Kansas Milling Company and respondent's first exception is accordingly overruled.

The second exception argued by the respondent is based upon an interpretation of the libel, which would rest the liability of the respondent, Kansas Milling Company, upon an alleged guarantee of the charter. This interpretation relies upon the sixth article of the libel hereinabove set forth. While it does not appear that such is the gravamen of the action (see paragraph fifth), nevertheless if it were it would still withstand the objection that it constitutes a common law obligation not cognizable in admiralty. Libelant's proctor asserts that paragraph Eighth shows that the claim is based "upon the fixture of December 31, 1946".

It is generally true that a bond securing the performance of a charter party is not a maritime contract within the jurisdiction of Admiralty and that a surety company executing such bond may not be sued thereon in admiralty. Pacific Surety Company v. Leatham and Smith Towing and Wrecking Company, 7 Cir., 1907, 151

---

[1] Scanamerican Chartering Corp.
New York, New York

Dear Mr. Bergesen:

On behalf Northern Star Steamship Co., Ltd. Owners of Canadian Flag S. S. "Captain Polemus" we confirm fixture of today on following conditions:
4,000 tons—10% more or less ship's option flour in bags.
Loading one berth New Orleans
Discharging one berth Santos
Freight $22.00 per ton of 2,240 lbs. prepaid in New York. Telegraphic advise signing B/L
Vessel pays loading. Discharging costs are of expense to vessel.

Loading 1,000 tons per WW day Sunday, Holidays ex.
Discharging 1,000 tons per WW day Sunday, Holidays ex.
$1,000 demurrage, $500 dispatch
Laydays January 10–20, 1947
Commission 2-1/2% Warship-voy Charter

It is understood that the vessel will be ready New Orleans about January 15th, unless surveyors order drydocking at Trinidad due to bottom damage. If vessel is unable to make cancelling date we will advise you immediately and you have option of cancelling charter.

As agents,
Ocean Freighting & Brokerage Corp.

F. 440; Eadie v. North Pacific S. S. Co., D.C.N.D.Cal.1914, 217 F. 662. In the Pacific Surety Co. [151 F. 441] case the court said: "That the charter party was a maritime contract and the undertaking of the charterer was for maritime service and transactions is unquestionable. * * * The appellant, however, as surety on the bond, was no party to the maritime undertaking; neither promised performance of the charter service, nor was authorized under the contract terms to perform. * * * The obligation of the appellant as surety on the bond was not for performance of the charter party, but for the payment of damages in the event of nonperformance on the part of the charterer."

■ From the language of that case it appears that the obligation of the guarantor was to pay money damages or to indemnify the shipowner. But the allegation in the libel (Article Six) in the case at bar indicates that the proof may show that the respondent, Kansas Milling Company, agreed to perform the charter in the event the Dawson Export Company defaulted thereon. If that be so then the agreement of Kansas Milling Company was a maritime contract; it was a guaranty to perform a maritime service (the charter party) and was not an agreement of indemnity. See Compagnie Francaise de Navigation a Vapeur v. Bonnasse, D.C.S.D.N.Y.1926, 15 F.2d 203, 204. "It is the nature of contracts which controls on the question of admiralty jurisdiction." Berwind-White Coal Mining Co. v. City of New York, 2 Cir., 135 F.2d 443, at page 446.

The respondent also argues that even if a maritime contract is involved and assuming that the libel states a cause of action, there is no allegation in the libel that the alleged guaranty was in writing, therefore any action thereon would be barred by the Statute of Frauds. Sec. 31, New York Personal Property Law, Consol. Laws. c. 41.

■ The fact that a contract is not in writing does not bar a suit thereon in admiralty. American Hawaiian S. S. Co. v. Willfuehr, D.C.Md. 1921, 274 F. 214, affirmed United States Fidelity & Guaranty Co. v. American-Hawaiian S. S. Co., 4 Cir., 1922, 280 F. 1023. A state Statute of Frauds is inapplicable to maritime contracts. In Union Fish Company v. Erickson, 248 U.S. 308, at page 314, 39 S.Ct. 112, 113, 63 L.Ed. 261, Mr. Justice Day stated the reason for the rule as follows: "If one state may declare such contracts void for one reason, another may do likewise for another. Thus the local law of a state may deprive one of relief in a case brought in a court of admiralty of the United States upon a maritime contract, and the uniformity of rules governing such contracts may be destroyed by perhaps conflicting rules of the states."

The final exception to the libel is that the doctrine of forum non conveniens is applicable to the facts herein and that the Court should decline jurisdiction. Respondent bases this contention upon the fact that the libellant and respondents are foreign corporations; that the officers and agents of the respondent company are indispensable witnesses and will be required to travel from the State of Kansas to New York; that the calendars of this court are badly congested whereas those of the forums of Kansas are not; and finally that the respondent desires to implead its alleged agent who is not subject to the process of this court.

The cases cited by the respondent in respect to the declination of jurisdiction in suits between "foreigners", involve an exercise of the Court's discretion in Admiralty, to decline jurisdiction in a suit between foreigners who are all nationals of countries other than the United States. The Belgenland, 1855, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; Canada Malting Co. v. Paterson Co., 1932, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 and cases cited therein, notes 2 to 5. Here the suit is between a citizen of Canada on the one hand and citizens of the United States on the other, and the doctrine discussed in the above cases is unrelated to this situation. See also Asiatic Petroleum Corporation v. Italia Societa Anonima Di Navigazione, 3 Cir., 1941, 119 F.2d 610.

In the application of the doctrine of forum non conveniens the Supreme Court in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508, 509, 67 S.Ct. 839, 843 (an action at

law) laid down some of the factors which a court may consider in exercising its discretion to decline jurisdiction on that ground as follows:

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

The great majority of these factors are lacking in the instant case. It appears from the libel that the claim is that the charter "fixture" sued upon was made in New York by agents of both parties residing in New York. The libellant has issued a warrant of attachment and a return thereon

has been made, the jurisdiction of the court originally attaching by virtue thereof. The witnesses for the respondent, other than those in New York, which the respondent will be required to bring from Kansas are willing witnesses, officers and agents of the respondent, about four in number. These factors are not so strong as to bestir the court to consider exercising its discretion to decline jurisdiction on the grounds of forum non conveniens.

The exceptions to the libel are overruled and the motion to dismiss the libel is denied.

Settle order on notice.