**MURRAY OIL PRODUCTS CO., Inc., v.
MITSUI & CO., Limited.**

No. 123.

Circuit Court of Appeals, Second Circuit.

Dec. 28, 1944.

---

[1] See Damages, 15 Am.Jur., Sec. 45, pp. 445, 446; Bailments, 6 Am.Jur., Sec. 291, pp. 376, 377.

Lemuel Skidmore, of New York City, for appellant.

Copal Mintz, of New York City, for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant, a Japanese corporation, appeals from a summary judgment for the plaintiff, entered upon an award of arbitrators, in an action for damages for failure to deliver a parcel of Manchurian "perilla oil," c.i.f. New York, under a contract of sale. The plaintiff began the action in the state court, and a few days later attached some of the defendant's bank accounts in New York. The defendant appeared and moved for a stay pending the war, which had then broken out; this was granted except that the defendant was required to serve an answer. It then removed the action to the district court and served an answer, pleading, among other defences, that the plaintiff had refused to arbitrate as the contract required. The court stayed the action as to all issues which could not be decided without evidence from Manchuria or Japan; but tried the issue whether the contract contained an arbitration clause, which the plaintiff denied. It found that the contract did contain such a clause; and ordered the parties to arbitrate; they did so, and the arbitrators made an award of $21,840 to the plaintiff, which thereupon moved in the action to confirm the award and for judgment. The defendant—though not disputing the award upon the merits—moved to discontinue the action and vacate the attachment, on the ground that this was the legal effect of the arbitration. The court confirmed the award; directed judgment for the plaintiff to be entered upon it; denied the defendant's motion to discontinue the action and to vacate the attachment; denied a cross-motion of the plaintiff (which we need not describe); and reserved jurisdiction to dispose of the attached property. A judgment was entered on this order, from which the defendant has appealed. The burden of its complaint is that by means of the attachment the plaintiff has obtained an unjust preference over its other creditors; the Alien Property Custodian having now seized its property, which will probably not be enough to pay all in full. It argues that the law of New York treats the submission of a cause to arbitration after an action has been brought as a discontinuance; and that this has been carried over into the Arbitration Act, 9 U.S.C.A. § 1 et seq. It further argues that the court has no power to direct the entry of judgment upon the award under § 9 of Title 9 U.S.C.A., because the

contract contained no provision authorizing this to be done.

The contract was made in New York; it purported to submit all controversies to arbitration which might arise under it: "Any dispute arising out of this contract to be settled by arbitration." If this is to be construed as a condition precedent to any action upon the contract, it was illegal in New York at common law. President, etc., of Delaware & Hudson Co. v. Pennsylvania Coal Co., 50 N.Y. 250; Sandford v. Accident Association, 147 N.Y. 326, 41 N.E. 694; Meacham v. Jamestown, etc., R. R. Co., 211 N.Y. 346, 105 N.E. 653, Ann.Cas.1915C, 851; Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 302, 169 N.E. 386. True, arbitration affects only the remedy (Atlantic Fruit Co. v. Red Cross Line, 2 Cir., 5 F.2d 218), and New York decisions do not control, but the doctrine is general, at least in this country. Hamilton v. Home Insurance Co., 137 U.S. 370, 385, 11 S.Ct. 133, 34 L.Ed. 708; Restatement of Contracts § 551(1); Williston (2nd Edition) § 1921A. On the other hand the clause at bar was perhaps not a condition precedent. Aktieselskabet, etc., v. Rederiaktiebolaget Atlanten, D.C., 232 F. 403, 406, affirmed sub nom. The Atlanten, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586. If so, it was not a bar to a suit at common law, regardless of its legality. In either view therefore § 3 did not need to remove, and did not remove, what would at common law have been a bar; on the contrary, it provided the defendant with relief —a stay—under conditions where before he would have been helpless to assert the arbitration clause at all. This was the measure of its change, so far as we can see; had it meant to go further and finally to dispose of the action, as the defendant argues, it would not have chosen the words used, for a stay presupposes that the action shall not abate; and if it does not, it must go to judgment of one kind or another. If a defendant wins before the arbitrators, he must be able to clinch his victory by a judgment; on the other hand, having invoked arbitration, he must also abide the result, if he loses. It would be a lame and impotent conclusion in that event to require the successsful plaintiff to begin a new action on the award. Arbitration is merely a form of trial, to be adopted in the action itself, in place of the trial at common law: it is like a reference to a master, or an "advisory trial" under Federal Rules of Civil Procedure, Rule 39(c), 28 U.S.C.A. following section 723c. That is the whole effect of § 3.

The New York decisions on which the defendant relies are irrelevant for several reasons. First, as we have said, the question, being one of the remedy, is not governed by the law of that state; and it is not clear that the federal law recognized the doctrine. Thornton v. Carson, 7 Cranch 596, 3 L.Ed. 451. Second, even if it did, the doctrine applies only where the parties have agreed to arbitrate, and not where, as here, one has been forced to do so. There was some color, in the event of an agreement, for saying that submission to arbitration should effect a discontinuance; but there is none whatever, when both have not agreed. Indeed, that is a situation which could not have arisen while courts refused specifically to enforce an arbitration clause. Last, § 3 would, for the reasons already given, have superseded that practice if it had previously been the law, and if it had applied to this situation. So far as concerned the entry of judgment, the order was plainly right.

Different considerations govern that part of it which refused to vacate the attachment. The strength of the defendant's argument here lies in the fact that, if the attachment stands, the plaintiff will have profited by its refusal to arbitrate, which was a breach of its contract. Since the defendant was willing to do so, the plaintiff could by hypothesis have arbitrated the claim and, either sued upon the award or entered judgment upon it by motion under § 9, if as it contends, that course was open to it in spite of the absence of such a provision in the contract. It did neither for two reasons: it denied that the contract contained such a clause; and it wished to attach the defendant's property. As to the first, it seems to us that there is as much reason for allowing an action to be brought to test the existence of an arbitration clause, as to test the factum of the contract in which the clause occurs. Kulukundis, etc., Corp. v. Amtorg, etc., Co., 2 Cir., 126 F.2d 978. Conceivably, there might be an exception—so far as concerns provisional remedies—if the promisee challenged the existence of the clause, or of the contract, in bad faith, and only to avail himself of attachment, the right to which he would not otherwise have. Since this was a summary judgment and the defendant at least suggests that

the plaintiff challenged the existence of an arbitration clause in bad faith, we will assume that such an exception exists, and that the plaintiff's first reason for bringing its action was bad. However, the second was good, because, we think, an arbitration clause does not deprive a promisee of the usual provisional remedies, even when he agrees that the dispute is arbitrable.

■ As we have seen, § 3 allows such actions to be brought upon contracts containing such clauses, and modifies the procedure only by substituting arbitration as the mode of trial. The promisee retains all those remedies after judgment that he has in any other action; his breach does not prejudice him. If it denies him the provisional remedies which would otherwise be appropriate, it is an unexpressed exception; implied, because to allow them would put a premium upon his wrong, and encourage a disregard of arbitration. But would it do so? If, as we have held, § 3 compels the promisee to arbitrate, he does not escape it by suing in advance of it. And is it clear that to deny him provisional remedies, will promote resort to arbitration? We should assume not. The most common reason for arbitration is to substitute the speedy decision of specialists in the field for that of juries and judges; and that is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do. Moreover, as we have seen, their denial must in any case be confined to instances in which the promisee does not in good faith challenge the contract or the clause. All these things considered, we cannot think that we should import into the section a limitation, which language does not demand, which could operate over only a part of the field, and which, so far as we can see, would be as likely to defeat as to aid the purpose of the act.

■ Finally, in one instance at least, the statute specifically provides for attaching the promisor's property in the face of an arbitration clause: § 8 allows a libellant in the admiralty to begin by arresting the ship, or by foreign attachment; the court directs the parties to proceed to arbitration, keeps jurisdiction of the case, enters its decree upon the award, and issues execution upon the ship, or the attached property. It may be objected that the absence of any such provision in § 3 indicates that nothing of the kind was there intended, in accordance with the usual canon. Whatever its force in other situations, that canon applied here, would, however, only serve to mislead us; for it is not too much to say that it would result in an altogether irrational division of the subject matter. The statute is confined to two kinds of claims: "maritime transactions," and transactions in interstate or foreign commerce. Since arbitration clauses are contracts, there will be few instances when the cause of action will not itself sound in contract. Maritime contracts are within the jurisdiction of the admiralty, interstate contracts usually are not. We cannot conceive any reason for giving the remedy of attachment—and arrest—to the first class, and denying it to the second; such a distinction would impute to Congress the merest whimsy, and that too, a whimsy which nothing in the text demands. A possible, and the only rational, explanation for § 8 is that it was adopted out of abundant caution, admiralty procedure being regarded as somewhat apart and esoteric; but that it was implicitly assumed that actions brought under § 3 would proceed throughout in accordance with the practice, applicable to them if arbitration were not the method of trial.

In the view we take it is not therefore necessary to consider the plaintiff's other contention; that it might have proceeded under § 9; and—apparently—that in a proceeding under that section, it might have attached the defendant's property at the outset.

Judgment and order affirmed.