**JAPAN LINE, LTD.**

v.

**WILLCO OIL LIMITED et al.**

Civ. No. N–75–259.

United States District Court,
D. Connecticut.

Jan. 9, 1976.

Shaun S. Sullivan, New Haven, Conn., Edwin E. McAmis, Martin S. Kaufman, New York City, for plaintiff.

Robert K. Marzik, Stratford, Conn., Richard Ashworth, Richard Jarashow, New York City, for defendants.

## RULING ON DEFENDANTS' MOTION TO QUASH ATTACHMENT AND DISMISS COMPLAINT

NEWMAN, District Judge.

The defendants in this admiralty case have moved to quash a foreign attachment, the garnishment of a debt owing from Conoco, International, Inc. to one of the corporate defendants and to dismiss the complaint for lack of jurisdiction. The lawsuit is for breach of a contract to charter one of plaintiff's ships and for breach of a guarantee of performance of that contract. Plaintiff concedes that this Court's jurisdiction depends on the validity of this foreign attachment, since none of the principals is found in this District. The defendants claim the debt that has been garnished is owed to a corporate entity different from those that contracted with the plaintiff. Defendants claim the Conoco debt is owed to Willco Oil Limited of Panama,[1] while the charter agreement is between Japan Line and Willco Cayman Islands and the guaranty was made by Willco London. Plaintiff contends that the relationship between the three Willco corporations is such that it ought to be able to reach assets held by Willco Panama in order to satisfy the obligations of Willco Cayman Islands and Willco London.

The plaintiff in the case concedes that it must prove some species of fraud in

---

1. Willco Oil Limited of Panama is a corporation existing under the laws of Panama. Willco Oil Limited of London is a corporation existing under the laws of the United Kingdom. Willco Oil Limited of the Cayman Islands is a corporation existing under the laws of the Cayman Islands. For ease of identification these three corporations will be referred to as Willco Panama, Willco London, and Willco Cayman Islands respectively.

order to sustain the attachment of the debt owed to Willco Panama by Conoco. It seeks an opportunity to conduct discovery in order to determine whether the Willco family of corporations has conducted business in such a manner as to make one corporation's assets reachable to satisfy the debts of another related corporation. Whether the claim is that a fraudulent transfer of assets has occurred or that the various corporations have simply been so operated that any one should be deemed to be the alter ego of the other, some proof of misleading action will be required, but the plaintiff's pleading is sufficient to permit such proof and, more pertinent to the present motion, sufficient to warrant discovery as to the relation between the defendant corporations. An admiralty court undoubtedly has jurisdiction to determine whether the separate corporate form of Willco Panama should be disregarded. *Swift & Co. v. Compania Caribe*, 339 U.S. 684, 689 n. 4, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); *Fisser v. International Bank*, 282 F.2d 231, 234–40 (2d Cir. 1960); *Yone Suzuki v. Central Argentine Railroad Co.*, 27 F.2d 795, 806 (2d Cir. 1928).

Defendants argue that the plaintiff has not sufficiently alleged fraud in its complaint so as to justify the granting of discovery to determine the nature of the interrelationship of the defendants. In the present case fraud does not constitute the basis of plaintiff's underlying cause of action, but rather it provides the foundation for the jurisdictional claim that the Court should disregard the various Willco corporate entities. Plaintiff has, in its amended complaint, clearly set out claims sufficient to suggest to the defendants the manner in which it will attempt to prove that the Willco corporate entities should be disregarded. A plaintiff that argues fraud as the basis of such a claim is not in a position to delineate the nature of the fraud with great specificity because it must describe events occurring in a transaction to which it is not a party. For the purposes for which Japan Line seeks to prove some kind of fraud on the part of the defendants, the allegations in the amended complaint are clearly sufficient. *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1351 (2d Cir. 1974).

Fraud on the part of the defendants is the jurisdictional predicate of this lawsuit. While attachment is a powerful weapon that should be carefully controlled by the courts, the plaintiff is entitled to discover facts that will either prove the basis for the attachment or compel its quashing. *Investment Properties International, Ltd. v. IOS, Ltd.*, 459 F.2d 705 (2d Cir. 1972); *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307 (2d Cir. 1970).

Defendant Willco London urges that the suit be dismissed as to it on the ground that its obligation cannot be enforced in admiralty. Plaintiff contends that the obligation of Willco London is to guarantee performance of the charter contract, which it asserts is within admiralty jurisdiction, and not merely to act as surety in the event of the principal's default, which plaintiff concedes is not an undertaking enforceable in admiralty. Willco London apparently contends that the guarantee-surety distinction has been abolished by the Second Circuit's opinions in *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 462 F.2d 673 (2d Cir. 1972) (*Interocean I*), and *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527 (2d Cir. 1975) (*Interocean II*).

As was stated in *Interocean I*, "Merely agreeing to act as surety for a charter party is not a maritime contract." *Id.* at 678; *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440 (7th Cir. 1907). But a guarantee of full performance of a maritime contract is an obligation enforceable in admiralty. *Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777 (2d Cir. 1927).

Did the opinions in *Interocean I* and *II* abolish the distinction? Willco London urges they did primarily because the opinions used the terms "surety" and "guarantor" interchangeably. Moreover the obligation in *Interocean* appears to be a guarantee of performance, thus giving some sig-

nificance to the observation in *Interocean I* that the obligation was not a maritime contract. However, the *Interocean* litigation posed no issue as to whether the obligation could be enforced in admiralty. Neither opinion in *Interocean* referred to Judge Hand's opinion in *Compagnie Francaise*, and it is not likely that the Second Circuit intended to overrule *sub silentio* his decision in litigation that did not even involve an issue as to admiralty jurisdiction.

In *Interocean II*, the distinction between the charter agreement and the guaranty was relied upon to conclude only that the guarantor was not a party to the charter agreement and therefore was not bound by the arbitration clause of that agreement. This conclusion casts no doubt whatever on the guaranty-surety distinction of *Compagnie Francaise*. *Interocean I*, however, is somewhat more in point. After observing that the obligation was not a maritime contract, the Court concluded that it was "therefore" subject to the state statute of frauds and not enforceable since it was not in writing. 462 F.2d at 678. This conclusion that the obligation was sufficiently outside the scope of maritime law to be subject to the state statute of frauds lends some support to the claim of Willco London that the obligation was also sufficiently outside the scope of maritime law to preclude assertion of admiralty jurisdiction.

This Court declines to draw the suggested inference from *Interocean I*. First, the opinion in *Interocean I* gives no indication that the surety-guaranty distinction of *Compagnie Francaise* was ever urged upon the Second Circuit. Had it been, that Court might well have concluded that the obligation was on the guaranty side of the line and might therefore have held the statute of frauds inapplicable. *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961). Second, the force of this part of the reasoning of *Interocean I* has been diminished by the acknowledgement in *Interocean II* that in fact the obligation had been expressed in writing. 523 F.2d at 527, n. 11. Whether the guaranty was a maritime contract thus became of no significance whatever to any issue in the litigation. Finally, it is not certain that the Second Circuit would have held the guaranty not cognizable in admiralty, even if it maintained the view that it was subject to the state statute of frauds. These circumstances preclude a conclusion that the *Interocean* litigation should be interpreted to overrule *Compagnie Francaise* and leave guarantees of performance of maritime contracts outside admiralty jurisdiction.

Accordingly, the motion to quash the attachment and dismiss the complaint is denied as to all defendants.