ANDROS COMPANIA MARITIMA, S.A., as agents for Owners and/or Chartered Owners of the S.S. SIFNOS and the S.S. PAROS, Plaintiff,

v.

ANDRE & CIE., S.A., Defendant.

No. 76 Civ. 2536 (WCC).

United States District Court,
S. D. New York.

March 21, 1977.

Healy & Baillie, New York City, for plaintiff; Raymond A. Connell, New York City, of counsel.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for Garnishee, Garnac Grain Co.; Francis J. O'Brien, Bruce J. Hector, New York City, of counsel.

CONNER, District Judge.

The subjects of the above-captioned maritime action are two February 1975 charter parties for the carriage of wheat from the United States Gulf Coast to Basrah, Iraq, executed by plaintiff Andros Compania Maritima, S.A. [Andros], a Panamanian corporation, and defendant Andre & Cie., S.A. [Andre], a corporation organized under the laws of Switzerland. Claiming demurrage due and owing under each charter party, Andros commenced this suit on June 8, 1976, and, pursuant to the provisions of Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, F.R.Civ.P. (Supp.),[1] effected a maritime at-

---

1. Rule B(1) provides:

"With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the reme-

tachment on all funds, credits, or other properties owned by Andre and held within this district by Garnac Grain Company [Garnac]. Presently before the Court is Garnac's motion for an order vacating that attachment.

At the root of Garnac's principal arguments on this motion is an arbitration clause contained in both of the charter parties at bar, providing in relevant part as follows:

"All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament of two arbitrators carrying on business in London, * * *, one to be appointed by each of the parties, with power to such arbitrators to appoint an Umpire. * *."

Pursuant to that provision and at Andros' instance, albeit subsequent to the institution of this suit, the parties nominated their respective arbitrators in London; the arbitration of the claims raised in Andros' complaint is apparently now in progress.

## I.

Garnac maintains that the above arbitration clause places the dispute between Andros and Andre within the bounds of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards [the Convention], 3 U.S.T. 2517, T.I.A.S. No. 6997, as implemented by Sections 201–08 of the Federal Arbitration Act, 9 U.S.C. §§ 201–08 (1976 Supp.). In the

light of 9 U.S.C. § 202,[2] and of the United Kingdom's accession to the Convention in September 1975, U.K. Treaty Command No. 6419, Andros would hardly be able to counter that contention.[3]

With so much acknowledged, there remains for consideration Garnac's argument that the Convention's applicability here is perforce fatal to the attachment presently under contest. That assertion, it must be noted, is not without some precedential support. Thus, in *McCreary Tire & Rubber Company v. CEAT S.p.A.*, 501 F.2d 1032 (3d Cir. 1974), the Third Circuit, concluding that "a continued resort to foreign attachment * * * is inconsistent with [the Convention's] purpose," *id.* at 1038, directed the district court to discharge the attachment levied in its case. Similarly, in *Metropolitan World Tankers Corp. v. P. N. Pertambangan Minjakdangas Dumi National*, 427 F.Supp. 2, 1976 A.M.C. 421 (S.D.N.Y. 1976), Judge Motley of this district, citing *McCreary* as authority, vacated an order of attachment, observing that, "there is no * * * indication that * * * prearbitration attachment is warranted under the convention." *Id.*, at 4, 1976 A.M.C. at 423.

Andros, for its part, would have this Court conclude that the *McCreary* and *World Tankers* cases are distinguishable— and significantly so—from our own. To be sure, the distinctions urged are readily noted. Thus, in both *McCreary* and *World Tankers*, the attachments at issue—by contrast to the attachment in the present case—had been effected pursuant to the

---

dies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies so invoked."

**2.** Section 202 reads as follows:

"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or en-

forcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States."

**3.** Were England not a signatory to the Convention, the latter's applicability to the present case would not be so certain, notwithstanding the seemingly broad compass of Section 202, in view of the reservations attaching to the United States' accession to the Convention. See Comment, International Commercial Arbitration under the United Nations Convention and the Amended Federal Arbitration Statute, 47 Washington L.Rev. 441, 464 (1972).

provisional-remedy allowances of State law. Moreover, in neither case could the plaintiff have colorably invoked—as Andros does herein—the aid of Section 8 of the Federal Arbitration Act, 9 U.S.C. § 8, which provides that,

"If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then * * * the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

Nevertheless, whether such distinctions are as significant as Andros would have them be is rather more problematic. Admittedly, the rulings in *McCreary* and *World Tankers* rest in part upon a base not furnished in the present case, *i. e.*, the fact that " 'the obvious purpose of the enactment of [9 U.S.C. § 205] permitting removal [from State court] of all cases falling within the terms of the treaty[] was to prevent the vagaries of State law from impeding its full implementation,' " *Metropolitan World Tankers Corp. v. P. N. Pertambangan Minjakdangas Dumi National, supra,* at 4, 1976 A.M.C. at 423, *quoting McCreary Tire & Rubber Company v. CEAT S.p.A., supra,* at 1038. However, it is no less true that each decision—in at least some pertinent part—bears unhappily upon Andros' present cause. Hence the following observations from *McCreary*:

"Quite possibly foreign attachment may be available for the enforcement of an arbitration award. * * *. This complaint does not seek to enforce an arbitration award by foreign attachment. It seeks to bypass the agreed upon method of settling disputes. Such a bypass is prohibited by the Convention if one party to the agreement objects. Unlike § 3 of the federal Act, article II(3) of the Convention provides that the court of a contracting state shall 'refer the parties to arbitration' rather than 'stay the trial of

the action.' The Convention forbids the courts of a contracting state from entertaining a suit which violates an agreement to arbitrate." 501 F.2d at 1038. (footnote omitted).

In a like vein, the *World Tankers* court noted that

"the very purpose behind the convention is to bring about the settlement of appropriate disputes solely through arbitration proceedings, and to allow a resort to attachment before such proceedings would seem to put an unnecessary and counterproductive pressure on a situation which could otherwise be settled expeditiously and knowledgeably in an arbitration context." 427 F.Supp. at 4, 1976 A.M.C. at 423.

Such observations assume a present relevance upon reference to Section 208 of the Federal Arbitration Act, which reads as follows:

"Chapter 1 [9 U.S.C. §§ 1–14] applies to actions and proceedings brought under this chapter [2] to the extent that chapter [1] is not in conflict with this chapter of the Convention as ratified by the United States."

█ Thus, this Court might easily enough extend the instruction of *McCreary* and *World Tankers* to support the conclusion that the "libel-cum-seizure" provisions of Section 8 are "in conflict with" the statutory implements of the Convention and therefore beyond Andros' present litigative reach. Declining to do so, the Court concludes, rather, that Section 8 is no more inimical to the Convention's design—*i. e.*, to encourage submissions of international commercial disputes to arbitral proceedings, see 1970 U.S.Code Cong. & Admin.News at p. 3601 *et seq.*; *Fotochrome, Inc. v. Copal Company,* 517 F.2d 512, 516 (2d Cir. 1975); see generally Quigley, Convention on Foreign Arbitral Awards, 58 Am.Bar Ass'n J. 821 (1972)—than it has been to the long-standing federal policy, reflected in chapter 1 as a whole, favoring resort to arbitration of disputes, whether or not entirely domestic, see *e. g., Demsey & Associates v. S. S.*

*Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410 (2d Cir. 1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Kulukundis Shipping Co., S/A v. Amtorg Trading Corporation*, 126 F.2d 978, 985 (2d Cir. 1942); *Danielsen v. Entre Rios Rys. Co.*, 22 F.2d 326, 327 (D.Md.1927).

As the Supreme Court noted decades ago, by enactment of Section 8, "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court." *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 46, 64 S.Ct. 863, 866, 88 L.Ed. 1117 (1943). Thus, commencement of an action pursuant to the terms of Section 8 does not *per se* represent a plaintiff's disavowal, or "bypass," *McCreary Tire & Rubber Company v. CEAT S.p.A.*, *supra*, at 1038, of his agreement to arbitrate, *e. g.*, *Commercial Metals Company v. International Union Marine Corporation*, 294 F.Supp. 570, 573 (S.D.N.Y.1968); *The Belize*, 25 F.Supp. 663, 665 (S.D.N.Y.1938); see *Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291, 293 (2d Cir. 1965).

Nor is the Court's retention of jurisdiction under Section 8, pending arbitration, in any respect inconsistent with the Convention or its implementing legislation, notwithstanding the *McCreary* court's suggestion to the contrary. This is by no means to ignore Article II(3) of the Convention, cited in *McCreary*, which prescribes that, "[T]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an [arbitration agreement that is subject to the Convention], shall, at the request of one of the parties, refer the parties to arbitration * * *." Rather, this Court merely concludes that Article II(3), thus framed, surely may accommodate the stays of litigation impliedly contemplated by Section 8 and expressly directed by Section 3.[4] See Comment, International Commercial Arbitration under the United Nations Convention and the Amended Federal Arbitration Statute, 47 Washington L.Rev. 441, 464 (1972); McMahan, Implementation of the United Nations Convention on Foreign Arbitration Awards in the United States, 2 J. Maritime & Commerce L. 735, 754 (1971); Aksen, American Accession Arrives in the Age of Aquarius: United States Implements United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 3 Sw.U.L.Rev. 1, 22 (1971); Quigley, Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale L.J. 1049, 1064 (1961).

Moreover, this Court cannot agree that the prearbitration attachment allowed by Section 8 would disserve the Convention's purposes by discouraging resort to arbitration or by obstructing the course of arbitral proceedings. True enough, an attachment may, in some manner and degree, further embarrass already unsettled relations between the parties; nonetheless, the arbitration process—by contrast to settlement negotiations, for example—hardly draws its strength from the parties' mutual good will. Furthermore, the attachment remedy is not without countervailing virtue. Thus, however limited its ultimate ruling by the force of *Bernhardt v. Polygraphic Company*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), *Murray Oil Products Co. v. Mitsui & Co.*, 146 F.2d 381 (2d

---

4. Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Cir. 1944), remains a source of valid instruction at least to the extent of the following observation:

> "The most common reason for arbitration is to substitute the speedy decision of specialists in the field for that of juries and judges; and that is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." *Id.* at 384.

See *The Anaconda v. American Sugar Refining Co.*, supra, 322 U.S. at 46, 64 S.Ct. 863; Domke, The Law and Practice of Commercial Arbitration § 26.02, at 266 (1968).

Garnac's charge that plaintiff has failed to cite "a single case in which a Rule B(1) attachment was preserved pursuant to § 8 * * * while the parties proceeded to arbitrate abroad," Final Reply Memorandum at 2, may regrettably be true, but is nonetheless ill-graced in light of *Konstantinidis v. Denizcilik Bankasi T.A.O.*, 307 F.2d 584 (2d Cir. 1962); *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Limited*, 293 F.2d 796 (9th Cir. 1961); see *The Graig Shipping Co. v. Midland Overseas Shipping Corporation*, 259 F.Supp. 929 (S.D. N.Y.1966); *Irini Stefanou*, 1966 A.M.C. 920 (S.D.C.D.Cal.1966); *Danielsen v. Entre Rios Rys. Co.*, supra ; and *The Fredensbro*, 18 F.2d 983 (E.D.Pa.1927). And, to the extent that it questions the Court's power to order arbitration abroad under Section 8—a matter that is in any event academic in view of the presently pending arbitration noted earlier—Garnac is referred to Section 206,[5] 9 U.S.C. § 206, which, the legislative history reveals, was framed with the express purpose to "clarify" such issue. S.Rep. No. 91–702, 91st Cong.2d Sess. 1, 7 (1970).

■ As for Garnac's insistence that the parties' current participation in the pending arbitration somehow places the operation of Section 8 (and, with it, Andros' attachment) beyond the legitimate boundaries of this case, it need only be noted that such thesis, if judicially endorsed,

> "would force a party to choose between arbitration, on the one hand, and his ancient admiralty right of jurisdiction in rem or by foreign attachment, on the other (except for the singular instance where the opposing party failed, neglected or refused to go to arbitration). The courts have rejected this conclusion. *The Belize*, supra; *Instituto Cubano De Estabilizacion Del Azucar v. T/V Firbranch*, D.C.S.D.N.Y.1954, 130 F.Supp. 170, 172. In *Instituto Cubano * * *, the court allowed libelant to qualify under Section 8 of the Arbitration Act even though it was clear that there had been no default or refusal to arbitrate and the arbitration was proceeding." *Texas San Juan Oil Corporation v. An-Son Offshore Drilling Company*, 194 F.Supp. 396, 398 (S.D.N.Y. 1961).

See also *Reefer Express Lines Pty., Ltd. v. Petmovar, S. A.*, 420 F.Supp. 16, 17–18 (S.D. N.Y.1976).

## II.

With notable vigor, Garnac asserts that the Supreme Court's ruling in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1971), coupled with a recent decision in our own district, *The Sanko Steamship Co. v. Newfoundland Refining Company*, 411 F.Supp. 285, 1976 A.M.C. 417 (S.D.N.Y.1976), aff'd without opinion, 538 F.2d 313 (2d Cir. 1976), is necessarily fatal to the attachment now in issue. Neither decision, however, dictates the conclusion urged by Garnac.

*The Bremen* involved a contract for towage, entered into by an American and a German corporation, containing a forum-selection clause that provided for litigation of any dispute arising from the contract in the High Court of Justice in London, England. When the parties' contractual relations eventually went awry, the American corpo-

---

5. Section 206, 9 U.S.C. § 206, provides as follows:

"A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement."

ration—notwithstanding the above choice-of-forum provision—brought suit in the United States District Court at Tampa, Florida. The German corporation's motion to dismiss or, in the alternative, for a stay was denied by the district court, whose ruling was affirmed on appeal to the Fifth Circuit.

On *certiorari*, the Supreme Court vacated the judgment below and remanded. Observing that, "No one seriously contends in this case that the forum-selection clause 'ousted' the District Court of jurisdiction over Zapata's action," the Court identified the "threshold question" before it as "whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." 407 U.S. at 12, 92 S.Ct. at 1914. "Present-day commercial realities," the *Bremen* Court concluded, demanded that such question be answered in the negative. Thus, noting that, "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts," *id.* at 9, 92 S.Ct. at 1912, the Court ruled that "the forum clause should control absent a strong showing that it should be set aside," *id.* at 15, 92 S.Ct. at 1916.

The *Sanko* case involved a contract that included the following forum-selection provision:

"(a) This charter shall be construed and the relations between the parties determined in accordance with the law of England.

"(b) *Any dispute arising under this charter shall be decided by the English Courts to whose jurisdiction the parties agree whatever their domicile may be*:

"Provided that either party may elect to have the dispute referred to the arbitration of a single arbitrator in London in accordance with the provisions of the [British] Arbitration Act, 1950 * * *." (emphasis added).

After the filing of its complaint, the plaintiff proceeded to seek, pursuant to Rule B(1) and by show cause order, an attachment under the provisions of New York law. Defendant rejoined with a motion to dismiss, grounded on the parties' contractual choice of forum. Concluding, on the basis of *The Bremen*, that the forum-selection clause before it "preclude[d] the plaintiff from invoking [its] jurisdiction," 411 F.Supp. at 286, 1976 A.M.C. at 419, the *Sanko* court granted defendant's motion; in the absence of any "provision of New York law which would authorize holding an attachment 'in limbo' pending the outcome of litigation going forward in some other jurisdiction," *id.*, 411 F.Supp. at 286, 1976 A.M.C. at 420 n.5, compare 9 U.S.C. § 8, the application for an attachment had effectively been mooted.

■ In truth, what most sharply distinguishes the present case from *The Bremen* and *Sanko* is not the absence of a forum-selection clause herein, but rather, the nature of that clause. It is true, to be sure, that "[a]n agreement to arbitrate before a specified tribunal [*i. e.*, arbitrators] is, in effect, a specialized kind of forum-selection clause * * *." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). Such a clause should, of course, be judicially honored at the behest of either of the parties thereto. So much is established by statute, 9 U.S.C. §§ 4, 206, and case law.

■ Nonetheless, a contractual provision for arbitration abroad, standing alone, scarcely precludes resort to our courts or, concomitantly, invocation of Section 8. In *The Bremen* and *Sanko*, a contractual provision directed—and narrowed—the parties' course to a foreign court. In the absence of a kindred provision, and in the presence of an agreement to arbitrate abroad, the path to this forum may be cleared by mutual waiver of the right to arbitration; it may, on the other hand, be paved by the need to enforce that right and/or to "preserv[e] the subject matter or assets intact within the

jurisdiction, thus making [the subsequent arbitral] award meaningful." Domke, The Law and Practice of Commercial Arbitration, *supra*, at 266. And, unlike the parties in *The Bremen* and *Sanko*, Andros and Andre simply did not contractually delimit—to the arguable exclusion of this Court and its application of the Federal Arbitration Act—the judicial forum to be addressed by them for such purposes or otherwise.[6]

### III.

■ Garnac's remaining challenge to the validity of the maritime attachment herein need not detain us long. Case law establishes that a defendant may "be found within the district"—and hence immune to attachment under Rule B(1)—only if

"(1) in personam jurisdiction can be obtained therein; *and* (2) he can, with due diligence, be served with process therein; and (3) at least where the defendant is a foreign corporation, it does sufficient business within the district to otherwise subject it to the jurisdiction of the court." 7A Moore, Federal Practice ¶ B.06 at 252 (1976).

Thus, without the support of each of these bases, Garnac's present argument must fall. Accordingly, it need only be noted that Garnac has failed to demonstrate that process might effectively have been served on Andre in this district, whether under Rule 4(d)(3) F.R.Civ.P. or, pursuant to Rule 4(d)(7) F.R.Civ.P., in accordance with relevant provisions of New York law. Garnac does not identify—nor, for that matter, does it assert the existence of—an "officer, a managing or general agent, or * * * any other agent authorized by appointment or by law to receive service of process" in this district on Andre's behalf. Although Garnac suggests that its own willingness to accept service of process for Andre might have been discovered by Andros in the exercise of "due diligence" by the latter, that suggestion is unavailing in the present context. Garnac does not claim to have itself been authorized by Andre to receive service. And its past sporadic, limited, gratuitous activities on Andre's behalf, as described in the briefs and affidavits before the Court, have not invested Garnac with the type of agency contemplated by the federal and state service-of-process provisions. See *Reefer Express Lines Pty., Ltd. v. Petmovar, S.A.*, *supra*, at 17; *cf. Klishewich v. Mediterranean Agencies, Inc.*, 42 F.R.D. 624 (E.D.N.Y. 1966), and cases cited therein; *Belgian Mission for Economic Cooperation v. Zarati Steamship Co.*, 90 F.Supp. 741, 742 (S.D.N. Y.1950).

For the foregoing reasons, Garnac's motion to vacate the attachment is denied.

SO ORDERED.

---

**6.** Had the parties done so, this Court would have been obliged to consider a further question, not answered by *Sanko*: whether or not the *Bremen* ruling extends to cases falling within Section 8.