EAGLE TRANSPORT LTD.,
INC., Plaintiff,

v.

John E. O'CONNOR and John E. O'Connor & Sons, Inc., Defendants.

No. 77 Civ. 5030.

United States District Court,
S. D. New York.

April 21, 1978.

Cardillo & Corbett, New York City, for plaintiff; Christophil B. Costas, New York City, of counsel.

Parker, Chapin, Flattau & Klimpl, New York City, for defendants; Mark Abramowitz, Lee W. Stremba, New York City, of counsel.

LASKER, District Judge.

Variously stating the facts in three separate causes of action, Eagle Transport Ltd., Inc. sues John E. O'Connor and John E. O'Connor & Sons, Inc., alleging that Eagle, a shipowner, concluded a charter party agreement in New York with Atlantic, the charterer, and that a term of the agreement was a commitment that the defendants would guarantee Atlantic's performance (¶ 10, Complaint). It is claimed that Atlantic breached the charter party and that the defendants have refused to honor the alleged guarantee.

Defendants move to dismiss on the grounds that: (1) the court lacks jurisdiction over them, (2) the first cause of action is not an admiralty claim (admiralty is the sole jurisdictional basis alleged in the complaint), and (3) the second cause of action fails to state a claim upon which relief may be granted. We take up defendants' third argument first.

■ Contrary to defendants' contention, Eagle's second cause of action, which alleges that Atlantic was a mere *alter ego* of defendants, does state a claim for relief. Eagle alleges that the defendants exercised a thoroughgoing control over Atlantic (¶ 18(b), (c), Complaint), that they employed the control fraudulently, by causing Atlantic to promise falsely that O'Connor & Sons would stand behind Atlantic's contract (¶ 20), and that the fraud injured Eagle (¶¶ 19, 20, 21). These allegations are a sufficient claim that the corporate identity of Atlantic ought to be disregarded and that the alleged control persons ought to be held liable for Atlantic's claimed breach of the charter party. *See Fisser v. International Bank*, 282 F.2d 231, 238 (2d Cir. 1960), adopting the standard set forth in *Lowendahl v. Baltimore & Ohio R. R. Co.*, 247 App.Div. 144, 287 N.Y.S. 62 (1st Dept.), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936); *accord, Interocean Shipping Company v. National Shipping and Trading Corporation*, 523 F.2d 527, 539 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

■ On the question of in personam jurisdiction: it is alleged that the underlying charter party—from which all the claims arise—was negotiated and concluded by Atlantic's agent in New York.[1] Under *Fisser v. International Bank, supra*, 282

---

1. There is disagreement, which need not be resolved at this stage, as to whether Atlantic's agent was also an agent of the defendants.

F.2d at 234, Atlantic's contractual activities in New York are attributable to the defendants:

> "it is clear that the consequence of applying the *alter ego* doctrine is that the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and at least in the area of contracts, the acts of one are the acts of all."

Having transacted business in New York through their alleged *alter ego*, the defendants are amenable to suit here on claims arising from the transaction. N.Y.C.P.L.R. § 302(a)(1) (McKinney's 1972). *See Aquascutum of London v. S.S. American Champion*, 426 F.2d 205, 209 (2d Cir. 1970) (New York's long arm statute applies in cases before a federal court sitting in admiralty).

Defendants also contend that the court lacks jurisdiction over the subject matter of Eagle's first cause of action, which alleges that defendants breached their commitment to "guarantee and remain responsible for the performance of Atlantic under the Charter" (¶ 10, Complaint). In support of their argument, defendants cite *Interocean Shipping Company v. National Shipping and Trading Corporation*, 462 F.2d 673 (2d Cir. 1972), where the court ruled that:

> "[m]erely agreeing to act as surety for a charter party is not a maritime contract. *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440, 443–44 (7 Cir. 1907) . . ." 462 F.2d at 678. (other citation omitted)

*Pacific Surety* distinguishes between a surety's undertaking merely to pay money damages in the event of the principal's default and an undertaking to specifically perform the principal's maritime obligations in the event of the principal's non-performance (151 F. at 441, 443–44). The latter type of obligation—which is the type alleged in the complaint—has consistently been held to be a maritime contract, *see, e. g., Japan Line Ltd. v. Willco Oil Limited*, 424 F.Supp. 1092, 1094–95 (D.Conn.1976); *Black Sea State Steamship Line v. Association of International Trade Dist. 1*, 95 F.Supp. 180, 182 (S.D.N.Y.1951); *Northern Star S.S. Co. v. Kansas Milling Co.*, 75 F.Supp. 534, 535–36 (S.D.N.Y.1947), under the rule that where the principal's obligation is maritime in nature, a promise to assume that obligation is itself a maritime contract. *See Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777, 779 (2d Cir. 1927).

For the reasons stated above, defendants' motion is denied.

It is so ordered.