PARAMOUNT CARRIERS CORPORATION,
Plaintiff,

v.

COOK INDUSTRIES, INC., Defendant.

No. 78 Civil 3771.

United States District Court,
S. D. New York.

Feb. 14, 1979.

Cardillo & Corbett, New York City, for plaintiff; Stephen C. Pascal, New York City, of counsel.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, Francis J. O'Brien, John Eric Olson, New York City, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant moves to vacate a maritime attachment obtained by plaintiff[1] and for the release of funds attached. The attachment was obtained after an arbitration proceeding had been initiated in London, England, wherein both parties designated their respective arbitrators pursuant to a charter party. Before commencement of this action, plaintiff, "in view of the present situation" of defendant, sought to have it post security in the arbitration proceeding. The defendant rejected the request, following which this action was instituted and the attachment obtained.

On February 8, 1978, plaintiff, as owner, and defendant, as charterer, entered into a charter party for the M. V. Margio. The complaint alleges that defendant was liable for demurrage under the terms of the charter party, as well as under a "side letter" signed the next day, whereby it guaranteed payment of demurrage if the receiver of the shipment failed to pay demurrage within sixty days after discharge. Demurrage upon unloading of the vessel at Alexandria, Egypt, amounted to $28,337, which the receiver failed to pay, whereupon the arbitration procedure specified in the charter party was invoked.

The first ground for defendant's motion to vacate the attachment is that a guarantee to pay demurrage due from a third party is not a maritime contract,[2] and hence the attachment should not have been issued under Rule B(1) of the Supplemental Rules. Plaintiff does not dispute that a guarantee to pay a third party's obligation for demurrage is not a maritime claim, but asserts that its claim is against the charterer as the primary obligor for all demurrage. It relies upon section six of the charter party, which provides, "[v]essel to have a lien on the cargo for all freight, dead freight, *demurrage* or average. Charterers' liability under this charter to cease on cargo being shipped, *except for* freight, dead freight and *demurrage*" (emphasis supplied). The defendant, the charterer, responds that this provision refers solely to its liability for onloading demurrage as provided for by paragraph seven of the charter party. It also emphasizes paragraph eight, which refers to demurrage at the port of unloading and provides "[r]eceivers to pay demurrage." Additionally, the defendant stresses the side letter whereby the charterer guaranteed payment of the demurrage if the receivers failed to do so and accordingly argues that its guarantee was of a third party obligation. Plaintiff, however, responds that under paragraph six the defendant remained primarily liable for both onloading and offloading demurrage and that the side letter was issued to make "clear that the charterers' responsibility remain[ed]."

It must be acknowledged, and the attorneys upon further argument of this motion agreed, that paragraph six is ambiguous. However, absent a specific exonerating clause in a charter party, the general rule is that the charterer is liable for demurrage incurred in loading *and* unloading the vessel.[3] There is no specific clause of

---

1. Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (authorizing maritime attachment and garnishment).

2. *Black Sea State S. S. Line v. Association of Int'l Trade Dist. 1*, 95 F.Supp. 180 (S.D.N.Y. 1951); *accord, Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) (dictum) (Harlan, J.); *Pacific Surety Co. v.*

*Leatham & Smith Towing & Wrecking Co.*, 151 F. 440 (7th Cir. 1907).

3. *Pennsylvania R. Co. v. Moore-McCormack Lines*, 370 F.2d 430, 432 (2d Cir. 1966) (citing cases). *Compare Gulf Puerto Rico Lines v. Associated Food Co.*, 366 F.Supp. 631 (D.P.R. 1973) (no exonerating clause) *with Hellenic Lines Ltd. v. Director General of India Supply Mission for and on Behalf of Union of India*, 319 F.Supp. 821 (S.D.N.Y.1970), aff'd, 452 F.2d

exoneration in the instant charter party, for paragraph eight does not absolve the charterer. Accordingly, the ambiguity must be resolved against the defendant. In this circumstance, the claim asserted against it is a maritime claim and subject to traditional admiralty procedures and attachment process. This conclusion is reinforced by the fact that those cases finding no admiralty jurisdiction involved guarantees by a non-charterer;[4] the obligation here, in contrast, derives from the duties growing out of the charter party itself and thus is "sufficiently related to peculiarly maritime concerns" as to bring the controversy within "the pale of admiralty law."[5]

The defendant next contends that the maritime remedy of foreign attachment pursuant to Rule B(1) of the Supplemental Rules may not be utilized solely for the purposes of obtaining security. It argues that an attachment under the Rule has a dual purpose—(1) to obtain jurisdiction of the defendant in personam through his property and (2) to assure satisfaction of any judgment in plaintiff's favor—and that the security obtained under such an attachment is incidental to obtaining jurisdiction.[6] Thus the defendant argues that because plaintiff, prior to this suit and the issuance of the attachment, had already nominated

its arbitrator, appeared in the arbitration proceeding and subjected itself to jurisdiction therein, this action was commenced solely to obtain the writ of attachment to secure plaintiff's claim in the arbitration proceeding now pending in London—that in effect this was an abuse of the process of the Court. It may be acknowledged that in fact plaintiff filed this suit primarily to obtain the benefit of the B(1) attachment procedures. But this does not require vacatur of the attachment. Section eight of the Arbitration Act expressly provides that a party "may begin his proceeding hereunder by libel and seizure of the vessel . . . according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."[7] With respect to this provision the Supreme Court has observed that "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than to litigate the merits in court."[8]

810 (2d Cir. 1971) (clause specifically exonerating charterers from demurrage).

4. *Compare* cases cited in note 2 *supra* (third party obligors of demurrage charges) *with Eagle Transport Ltd. v. O'Connor*, 449 F.Supp. 58 (S.D.N.Y.1978) (admiralty jurisdiction attaches where obligor guarantees performance of maritime obligation; claim that obligors as related to charterer were directly liable for breach of charter party) *and Japan Line, Ltd. v. Willco Oil Ltd.*, 424 F.Supp. 1092 (D.Conn.1976) (similar); *cf. Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777 (2d Cir. 1927) (L. Hand, J.).

5. *Kossick v. United Fruit Co.*, 365 U.S. 731, 738, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961) (Harlan, J.). The conclusion that the charterer's obligation is essentially a maritime duty is borne out by a recent case decided by Judge Brieant, *Indiana Farm Bureau Coop. Ass'n v. S. S. Sovereign Faylenne*, 75 Civ. 5144 (S.D.N.Y. Oct. 12, 1977). The charter party in that case was similar to the one in the instant proceeding: the charterer was liable for demurrage

generally, and receivers were specifically liable for offloading demurrage, which the charterer agreed to pay if the receivers did not. The Court assumed admiralty jurisdiction in the case under the obligations assumed by the charterer in the charter party.

6. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A.*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); *Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963); *see also Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965); *D/S A/S Flint v. Sabre Shipping Corp.*, 228 F.Supp. 384 (E.D.N.Y.1964); *United States v. Cia. Naviera Continental S. A.*, 178 F.Supp. 561 (S.D.N.Y.1959).

7. 9 U.S.C. § 8.

8. *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 43, 64 S.Ct. 863, 866, 88 L.Ed. 1117 (1944); *Albatross S. S. Co. v. Manning Bros.*, 95 F.Supp. 459, 463 (S.D.N.Y.1951).

It is true in this instance the attachment was issued after the arbitration had been commenced, whereas the above section states that a party "may begin the proceeding" by seizure of a vessel. However, there is nothing in the Act that suggests the provisional remedy may not be applied for after the commencement of arbitration. As has been observed, arbitration is a phase of a suit in admiralty,[9] and it is immaterial that the arbitration was commenced prior to the filing of the suit wherein the attachment was obtained.[10]

■ Finally, the defendant urges vacatur of the attachment on the ground that the United States Convention on the Recognition and Enforcement of Arbitrable Awards (the "Convention")[11] does not authorize attachments either pre- or post-arbitration. The issue was considered extensively by Judge Conner who, upon facts substantially similar to those in this case, concluded that the Federal Arbitration Act was not inconsistent with the Convention or its policies.[12] I am fully persuaded by my colleague's reasoning and analysis that section eight of the Arbitration Act is not in conflict with the policies of the Convention. " 'The most common reason for arbitration is to substitute the speedy decision of specialists in the field for that of juries and judges; and that is entirely consistent with a desire to make as effective as possible recovery upon awards after they have been made, which is what provisional remedies do.' "[13] The cases relied upon by defendant[14] are readily distinguishable, as Judge Conner pointed out, since they involve state attachment procedures and presented entirely different issues.

The motion to vacate the attachment is denied.

9. *The Sydfold*, 25 F.Supp. 662, 663 (S.D.N.Y. 1938).

10. *Reefer Express Lines Pty., Ltd. v. Petmovar S. A.*, 420 F.Supp. 16 (S.D.N.Y.1976).

11. 9 U.S.C. §§ 201–208.

12. *Andros Compania Maritima, S. A. v. Andre & Cie., S. A.*, 430 F.Supp. 88 (S.D.N.Y.1977).

13. *Id.* at 93, *quoting Murray Oil Prods. Co. v. Mitsui & Co.*, 146 F.2d 381, 384 (2d Cir. 1944).

14. *McCreary Tire & Rubber Co. v. CEAT, S.p.A.*, 501 F.2d 1032 (3d Cir. 1974); *Metropolitan World Tanker Corp. v. P. N. Pertambangan Minjakdangas Bumi National (P. M. Pertamina)*, 427 F.Supp. 2 (S.D.N.Y.1975); *see Coastal States Trading, Inc. v. Zenith Nav., S. A.*, 446 F.Supp. 330, 341 (S.D.N.Y.1977) (also distinguishing above cases).