The WEST OF ENGLAND SHIP OWNERS MUTUAL INSURANCE ASSOCIATION (LUXEMBOURG)

v.

McALLISTER BROTHERS, INC.

v.

McALLISTER TOWING AND TRANSPORTATION CO., INC.

and

Masters of the Tugs "John Doe" and "Jane Doe".

Civ. A. No. 93–3912.

United States District Court, E.D. Pennsylvania.

Aug. 5, 1993.

Richard Q. Whelan, Palmer, Biezup & Henderson, Philadelphia, PA, for plaintiff.

Mary Elisa Reeves, Philadelphia, PA, for defendant.

## MEMORANDUM

BARTLE, District Judge.

This case involves a dispute over the alleged failure of defendants to pay certain premiums or calls arising out of a maritime insurance contract.

In this connection, plaintiff, The West of England Ship Owners Mutual Insurance Association (Luxembourg) ("West of England"),

obtained a Court order attaching two tugs, owned by defendant, McAllister Towing and Transportation Co., Inc. ("McAllister"), when they entered the Port of Philadelphia in the Eastern District of Pennsylvania. Plaintiff did so pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims ("Rule B"), which provides:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels ... to the amount sued for, if the defendant shall not be found within the district.

On July 26, 1993 the Court denied the motion of McAllister to vacate the attachment because the defendant was not "found" within the Eastern District of Pennsylvania, as that term is defined under the Rule 829 F.Supp. 122. Defendant has now renewed its motion to vacate, on a ground not previously raised.

In support of its renewed motion, defendant alleges that an arbitration proceeding was commenced prior to the attachment, and that the law precludes the use of maritime attachment where an arbitration proceeding is pending. The relevant facts are not in dispute.

In January, 1993 the parties submitted to arbitration certain disputes over payment of premiums or calls under maritime insurance policies, and appointed Mr. Peter Gross, Q.C. as sole arbitrator. No disputes were ever submitted to Mr. Gross because the parties were able to reach a settlement in May, 1993. The written settlement agreement provides, in relevant part:

> WHEREAS the parties now desire to settle their differences in accordance with the terms and conditions of this Agreement.

> Now therefore the parties agree as follows:—

> .  .  .  .  .

> 10. The parties hereto agree to submit all disputes howsoever arising out of the entry and/or of this Agreement to arbitration before Mr. P. Gross QC but if for any reason Mr. Gross is unable or unwilling to act, a new arbitrator will be appointed by agreement between the parties hereto, or failing their agreement, but the then secretary of the London Maritime Arbitrators Association at the request of one or both of the parties to this agreement.

To date, no claims under the settlement agreement have been submitted for arbitration to Mr. Gross or anyone else.

■ Defendant contends that the arbitration, which was originally commenced in January, 1993, was not terminated by the settlement agreement but was "effectively stayed" pending settlement negotiations and thus is still ongoing. According to defendant, the fact that the agreement references Mr. Gross as arbitrator indicates that the parties contemplated a continuance of the proceedings already in progress. This position is without merit. The May, 1993 agreement was a settlement of disputes between the parties. Thus, any current dispute would arise under that settlement agreement. Furthermore, the agreement clearly states that the parties shall "submit" to arbitration all disputes with respect to the settlement. The term "submit" connotes the commencement of proceedings, rather than the continuation of proceedings already underway. The fact that the document specifically names Mr. Gross merely indicates that the parties have agreed in advance on the identity of an arbitrator if one is needed. However, there are no claims presently pending before Mr. Gross. Accordingly, this Court finds that no arbitration was pending at the time of the attachment.

■ Furthermore, even had arbitration proceedings commenced prior to the attachment, this Court does not adopt defendant's theory that a pending arbitration precludes a plaintiff from utilizing the remedy of admiralty attachment. Defendant relies for its position on *Continental Chartering and Brokerage, Inc. v. T.J. Stevenson and Co., Inc.*, 678 F.Supp. 58, 60 (S.D.N.Y.1987). In that case, the court stated, without explanation, that the plaintiff was precluded from seeking admiralty attachment because it had previously commenced arbitration proceedings.

■ Defendant also contends that the language of the Federal Arbitration Act mandates this result. 9 U.S.C. § 8 provides:

If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may *begin* his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award. (emphasis added).

Defendant argues that because the statute provides that a claimant may "begin" its suit by attachment, a claimant who has already "begun" suit by commencing arbitration proceedings may not use that procedure.

We agree with the majority of cases which have held to the contrary. *See e.g. Siderbulk, Ltd. v. M/S Nagousena,* 1992 WL 183575 (S.D.N.Y.1992); *Paramount Carriers Corp. v. Cook Indus., Inc.,* 465 F.Supp. 599, 602 (S.D.N.Y.1979); *Reefer Express Lines Pty., Ltd. v. Petmovar S.A.,* 420 F.Supp. 16 (S.D.N.Y.1976). In *Paramount Carriers, supra* at 602, the court explained that although the statute provides that a plaintiff may begin by seizure of a vessel, nothing in the act suggests that the remedy may not be applied after the commencement of arbitration. The language of the statute merely *permits* a party to commence an action through attachment. It does not limit the party's ability to use that procedure after arbitration has begun.

The rationale behind the attachment remedy provides support for this conclusion. Attachment pursuant to the admiralty rules serves the dual purpose of obtaining jurisdiction over the defendant through its property, and of providing security for the satisfaction of any award in the plaintiff's favor. *Seawind Compania, S.A., v. Crescent Line, Inc.,* 320 F.2d 580, 581 (2d Cir.1963). In *Anaconda v. American Sugar Refining Co.,* 322 U.S. 42, 46, 64 S.Ct. 863, 866, 88 L.Ed. 1117 (1944), the Supreme Court explained:

> Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court.

Thus, so long as a plaintiff has satisfied the requirements under Rule B, a pending arbitration does not preclude attachment, that form of security traditionally available in admiralty or maritime cases.

The renewed motion of defendant, McAllister Towing and Transportation Co., Inc., to vacate the attachment will be denied.